14   419
18   445
5*   68

[No. 944.]

## CATHERINE DALTON, Appellant, *v.* PETER DALTON, Respondent.

When Equity will Relieve a Person Who has been Deceived.— Plaintiff is the mother of the defendant, and brought this action to recover certain lands upon the ground that defendant obtained the legal title thereto through fraud. She is over sixty years of age, and can neither read nor write. She was induced by certain alleged fraudulent representation of her son, to convey the property to M., who thereafter conveyed the same to defendant. *Held,* that the circumstances demanded of the defendant the utmost sincerity and fair dealing; that if plaintiff, having confided in defendant—as a mother has good reason to think she may confide in a son—was actually misled, she is entitled to relief in a court of equity.

Evidence Admitted without Objection.—Parol evidence to establish a trust was admitted without objection. *Held*, that it was too late to raise the objection on appeal to this court, and that it must be considered and given its full value.

Sufficiency of Evidence to Establish a Trust.—Parol evidence to defeat a deed and establish a trust, must be clear, and attended with no uncertainty, and even then should be received with great caution.

Idem—Insufficiency of Evidence to Support Finding.—*Held*, upon a review of all the facts, that the testimony was insufficient to support a finding, that plaintiff paid no consideration for the property in question, but held it in trust for defendant.

Appeal from the District Court of the Second Judicial District, Washoe County.

The facts are stated in the opinion.

*W. Webster* and *W. L. Knox*, for Appellant.

The evidence shows a consideration for the deed made by McKay to appellant.

A trust can not be shown by parol evidence. (2 Leading Cases in Eq. 670, 715.) To allow the defendant to attack the deed by parol evidence, would be clearly in contravention of the statute of frauds. (*Wilkinson* v. *Wilkinson*, 2 Dev. Eq. 376; *Morris* v. *Morris*, 2 Bibb. 311; 2 Eq. L. C. 716, 717; Hill on Trustees, 171; 2 St. Eq. J. 1199, note 1, to sec. 1199, 553.)

*Robert M. Clarke* and *N. Soderberg*, for Respondent.

I. The evidence in the record is sufficient to support the findings. (*Boskowitz* v. *Davis*, 12 Nev. 468.) The plaintiff voluntarily conveyed the property to Manning. Defendant's money paid for the land, and neither McKay nor plaintiff ever had any interest in the land, but acted solely as trustees for defendant. (1 Perry on Trusts, sec. 126.)

There was an express promise by plaintiff to hold the land in trust for defendant, and in pursuance of that understanding there was a delivery of possession, entry, and occupation of the property by defendant, whereby the contract was taken out of the operation of the statute. (*Church* v. *Sterling*, 16 Conn. 388; *Wagoner* v. *Speck*, 3 Ohio R. 294–6; *Bayles* v. *Baxter*, 22 Cal. 575; 18 Conn. 228.)

A resulting trust having once attached to real property (no rights of innocent purchasers being involved) continues to bind the property in the hands of the trustee and his grantees, until released by the *cestui que trust*. (*Williams* v. *Van Tuyl*, 2 Ohio St. 336; 53 Maine, 407.)

II. Defendant being a stranger to the deed from McKay to plaintiff, is not estopped by any recital in the deed, from raising a trust by parol in favor of himself. (5 Cush. 431.)

III. If the proof on that point was incompetent the objection should have been taken on the trial, or before the decree was entered. (*Johnson* v. *Brooks*, 29 Cal. 223; *Curiac* v. *Packard*, Id. 194; *McCloud* v. *O'Neall*, 16 Id. 392; *Jackson* v. *Jackson*, 5 Cow. 173.)

By the Court, Leonard, J.:

This action was brought to recover certain lands and a water right in connection therewith, upon the ground that respondent obtained from appellant the legal title thereto through fraud. The cause was tried by the court without a jury. Respondent recovered judgment in his favor.

Appellant moved for a new trial upon the grounds that the evidence did not justify the findings and decision of the court, and that they were against law. This appeal is taken from the order overruling that motion and from the judgment.

The findings of the court are as follows:

"1. On and prior to October 5, 1874, one Donald McKay had and held the title to the lands described in the pleadings herein, but in trust, for the use and benefit of defendant, Peter Dalton, and in no other manner, and for no other use, benefit, or purpose whatever.

"2. That afterwards, on the said fifth day of October, 1874, the said Donald McKay, at the instance and request of said Peter Dalton, the defendant, and without any consideration whatever, and for the use and benefit of the said Peter Dalton, conveyed the said land and premises to the plaintiff, Catherine Dalton, and the said Catherine Dalton then took and received the said conveyance for the use and benefit of the said Peter Dalton, defendant, and in trust for him, with-

out giving, paying, or surrendering any consideration therefor, but with the express agreement to hold the said title for the sole use and benefit of the defendant, and to convey the same to him, or to his use, whenever requested.

"3. That afterwards, and on the twentieth day of April, 1876, the plaintiff, Catherine Dalton, still holding the said title for the use and purposes, and in trust and in the manner, aforesaid, at the instance and upon the request of the defendant, Peter Dalton, and without any consideration paid, or agreed to be paid, conveyed the said premises to A. H. Manning in trust, and for the use and benefit of the defendant, Peter Dalton; and the said A. H. Manning, without the payment of any consideration, took the said conveyance in trust for the defendant, and agreed to hold the same for the sole use and benefit of, and agreed to convey the said premises to, the defendant, and to the defendant's use, whenever requested.

"4. That afterwards, and on the first day of May, 1877, the said A. H. Manning, at the instance and upon the request of said defendant, and without the payment to him of any sum of money or consideration whatever, conveyed the said title and premises to the defendant, Peter Dalton.

"5. That ever since the fifth day of October, 1874, the said Peter Dalton has had the equitable right to, and beneficial interest in, the said premises, and has had the possession, use, and benefit thereof, and ever since the first day of May, 1876, the said Peter Dalton has had the legal title to said land and premises, and has had the possession and use thereof, and has been, and now is, the owner of the same and every part thereof.

"6. The court further finds that it is not true, as alleged in said complaint, that the plaintiff, Catherine Dalton, is the owner of any part of the real estate described in the complaint, or that she ever was such owner, or that she ever had any right to, or interest in, the same, otherwise than as hereinbefore expressly stated. That it is not true, as in the said complaint alleged, that the said plaintiff ever gave or rendered any consideration whatever for the said real estate, or that the said conveyance was made in considera-

tion of moneys advanced, or work or labor performed, or for care, or providing for defendant when sick, or for money charges incurred or paid in defendant's sickness, or in consideration of love and affection. That it is not true, as alleged in said complaint, that defendant committed any fraud, or made the alleged false and fraudulent representations, or any of them, or in any manner, as in the complaint alleged, or otherwise, defrauded, cheated, misled, deceived, or improperly influenced the plaintiff. On the contrary, plaintiff well knew the purport of her said conveyance to Manning, and that the same was to be without consideration to her, and for the use and benefit of the defendant."

"As conclusions of law, the court finds that the conveyance from Catherine Dalton to A. H. Manning, and the conveyance from A. H. Manning to the defendant, Peter Dalton, were not fraudulent, but were entirely valid, and that the defendant, Peter Dalton, is entitled to have judgment against the plaintiff; that she (he) go hence without day, and for his costs, and it is so ordered."

It is proper, first, to consider that portion of the sixth finding of fact, wherein it is found that respondent did not act fraudulently with appellant in obtaining the deed from her to Manning, and from the latter to himself; that he did not in any manner defraud, cheat, mislead, deceive, or improperly influence appellant; for the finding in question, if correct, should, and does, deprive appellant of the relief sought, regardless of other facts found and proved. If there was no fraud, concealment, or undue influence, by which respondent obtained the legal title to the property in question, then appellant is bound by her deed to Manning. If, on the contrary, fraud should have been found, she is entitled to relief, if the case in other respects entitles her thereto.

The record shows the following facts: Appellant is an old lady—over sixty years of age—and is respondent's mother. She can neither read nor write. He naturally had great influence over her, and such was evidently the fact. Indeed, one witness, Holt, testified that he had known them about seven years—had been to their place, and they had been to

his; that he had an influence over her in business; that she trusted everything to him; that what he said was law to her; that he did all the business, and whether it was wrong or right, it was right with her.

She testified: "He told me he had sold his ranch (the Bowker ranch), to a man in Sierra Valley, and wanted me to sell mine. , He said he would take the money and go to Oakland to live, and would give me all the money I wanted. He said he could sell his ranch better if I would sell mine. I consented to sell. I made a deed four or five days after this. He came to my bed when I was sick and told me this. When I made the deed, I thought I was making a deed to a man in Sierra Valley, but it was to a man in town. When I signed the deed, I was not informed to whom the deed was made. * * * This was on Saturday. Peter went with me. · He said he would go in on Monday and get the money. He said: 'Don't tell anybody what I have done.' I went to town afterwards, and Mr. Williams told me what I had done—that I had sold the ranch to Mr. Manning. * * * I stayed as long as I could in the house with him and his wife after they married. I told him he and his wife might have trouble, and she would get his property. I told him if the deed was made to me I would not sell it. When I got the deed from McKay I was living with him. * * * I saw the deed in Mr. Williams' office. I put my hand to the pen. The deed was not read to me. I thought it was to a man in Sierra Valley. I have no money now. I believed what Peter told me about selling his ranch to a man in Sierra Valley, but what he told me was not true."

The testimony of Mr. Williams, who drew up the deed, shows that it was drawn at the request of respondent, two or three days before it was signed. The mother and son went to the office together. The latter asked for the deed. It was not read to her, nor did she have any notice of its contents before she executed it. The deed from appellant to Manning was executed on Saturday, and that from Manning to respondent on the Monday following. Manning testified: "I know of a deed being executed to me of the Libby and Lambirth ranch by Mrs. Dalton. Peter spoke

to me about it before the deed was executed. His mother did not. He wanted me to take the deed from her. I paid nothing. It was understood that I took the deed in trust for Peter Dalton—*understood with him.* Had no money interest in it. I did it as a favor to him." The deeds from McKay to appellant, from the latter to Manning, and from him to respondent, were all bargain and sale deeds, containing covenants of warranty, with a consideration, as stated, of two thousand dollars.

Appellant claimed in her complaint, and testified at the trial, that the property in controversy was conveyed to her by McKay (who, in fact, held the title in trust for respondent), at the request of her son, in satisfaction of moneys due to her from him. Bridget Duffy testified to the same; while respondent claimed and testified that he owed his mother nothing; that she paid nothing, either to McKay or to him; that his mother wanted ten or twenty acres of the Bowker ranch, and to pacify her he concluded to give her a deed of the whole ranch in question; that she agreed to hold it for him. Respondent testified as follows: "At the time of the deed to Manning I had some talk of selling my ranch to a man in Sierra Valley. I told her I wanted to sell out, and so I did. She would be safe. I would always take care of her. I told her that she should be supported, if I had to go to work to do it. There was no agreement that any amount of money should be given her; nothing was said about the amount to be received, or about any money for her or her interest. I told her the deed was to Manning, but did not say what Manning. After the deed was made, she said ' everything was mine now.' She gave all up to me. She knew that I had not sold the ranch at that time. I have always been ready and willing to support her."

The mildest possible construction that can be put upon his testimony, as well as hers, is that he intended to conceal from her many important facts, and to induce her to believe in the existence of other facts that did not have any real foundation. It can not be doubted that at the time of the deed from her to Manning, his concealed intention was to

get the legal title in himself. He had already asked Manning to take the title and hold it for him, and on the very next week day that object was consummated by a conveyance from Manning. He has held the property ever since, and there is no proof that he made any effort to sell either to a man in Sierra Valley or to any one else. It is plain to our minds that he kept his real intentions to himself, while he told her that his object was entirely different. No reason is given, and it is difficult to perceive what ones can be assigned, why he had the title passed from her to Manning, and directly from the latter to himself, instead of taking it in the first instance from her.

No reason is given why he asked her to keep secret the fact that she had conveyed the property, and we can perceive none, except that he wished to get the deed from Manning before the truth should come to light. He does not deny that he told her not to tell what had been done, or that he told her, when she executed the deed, that he would go to Reno on Monday and get the money; thus showing that she supposed she was selling the ranch outright for money, instead of to Manning in trust for her son. All the circumstances demanded of him the utmost sincerity and fair dealing. She could not read, and it was his duty to tell her what she was doing, and the effect of her deed, without concealment of any important fact. She was old, and confided in him as a mother has good reason to think she may confide in a son. She was deceived, and equity comes to her relief. (Perry on Trusts, sec. 166, *et seq.*)

That portion of the sixth finding under consideration is not sustained by the evidence, so far as it relates to the only material question to be considered here, that is to say, whether or not respondent obtained the legal title by such arts and acts, that equity will not permit him to hold and enjoy any beneficial interest in, or use of, the property, if it ought to be enjoyed by appellant.

All the evidence in the case was admitted without objection, so far as the record shows. It is, therefore, too late now to object to the manner of proof. It was the duty of the court below to give it its full value, and our duty is the

same.  (*Sherwood* v. *Sissa*, 5 Nev. 355; *McCloud* v. *O'Neall*, 16 Cal. 397.)

We shall not consider whether respondent was such a stranger to the deed from McKay, that the general rules applicable to parties to written instruments did not apply to him, and that he could contradict its terms by parol by showing that no consideration was paid by appellant; or whether such parol evidence when given was competent to raise a resulting trust, and thus vary the character of the deed as a bargain and sale with covenants of warranty between the parties, by engrafting upon it any condition, limitation, or reservation, inconsistent with its terms; or whether an express trust can be proven by parol testimony that is admitted without objection.  But without expressing any opinion as to how they should be answered, if occasion required, and for the purpose of this case only, we shall resolve the above questions in favor of respondent.

How then does the case stand?  The burden of proof to show a trust was upon respondent.  His claim is opposed by the deed, and his answer setting up a trust is deemed denied by appellant.  If it be admitted that a trust ought to have been found, if the proof was sufficient to sustain the finding that appellant paid no consideration, it certainly can not be claimed that a trust arose, if appellant paid the valuable consideration stated in her testimony.  If the clearest and strongest testimony must be produced to show a resulting trust in favor of one who claims to have paid the purchase money, when the deed is in the name of another, it must be true in this case, that the same certainty of proof is required to show that no valuable consideration was paid.  Parol evidence of any fact that will defeat the apparent object and effect of a deed must be clear, and attended with no uncertainty, and even then should be received with great caution.  If the law was otherwise, the door would be opened wide to fraud and perjury, and no man could rest in safety upon his title.  In the great case of *Cook* v. *Fountain*, 2 Swanston, 591, it is well said that "there is one good, general, and infallible rule that goes

to both of these kinds of trusts (express and implied); it is such a general rule as never deceives; a general rule to which there is no exception, and that is this: the law never implies, the court never presumes a trust, but in case of absolute necessity. The reason of this rule is sacred; for if the chancery do once take liberty to construe a trust by implication of law, or to presume a trust unnecessarily, a way is opened to the lord chancellor to construe or presume any man in England out of his estate; and so at last every case in court will become *casus pro amico.*"

In *Graves* v. *Graves*, 29 N. H. 145, it is said: "In the class of cases where it is held that a trust results to the party who owns the money, it is held that the evidence must be clear as to the ownership of the money. (2 Fonb. Eq. 117.) And in a case of this kind, the proof of want of consideration ought to be equally satisfactory." The fact on which the plaintiff relied in that case, was that there was never any consideration paid.

"The claim in this case is opposed by the face of the patent and by the answer of the trustee. These, we agree, may be contradicted by parol evidence, but to succeed against them, the clearest and strongest testimony must be produced. * * * A bill, when denied, must be proved by at least two witnesses, or by one witness and corroborating circumstances." (*Jennison* v. *Graves*, 2 Blackf. 448; *Smith* v. *Brush*, 1 Johns. Ch. 459; *Boyd* v. *McLean*, Id. 591; *Clarke* v. *Quackenbos et al.* 27 Ill. 288; *Greer* v. *Baughman*, 13 Md. 268; *Brawner* v. *Staup*, 21 Id. 337; *Harrison* v. *McMenomy*, 2 Edw. Ch. 255; *McBarron et al.* v. *Glass et al.*, 30 Pa. St. 134; *Holder and wife* v. *Nunnelly et al.* 2 Caldw. 288; *Grooms* v. *Rust*, 27 Tex. 231; *Frederick* v. *Haas*, 5 Nev. 394; *Millard* v. *Hathaway*, 27 Cal. 119.)

It remains to examine the testimony in the light of the above cases, keeping in mind also the fact, that if it was competent for appellant to show a want of consideration by parol, it was equally so for respondent to rebut such testimony by the same kind of proof.

Respondent was a witness for himself, and upon his testimony the findings must have been based.

He testified that he paid for the Bowker ranch in 1870, which he now owns; also, that he paid for the property in question; that he got McKay to buy it for the reason that the parties who owned it would not sell to him; that no part of the money paid for either belonged to his mother; that it was all his own; that she paid nothing for it at any time, but was to take the title and hold it for him; that Mrs. Duffy was at the ranch when the deed was made by McKay; that he *never told his mother or Mrs. Duffy that he knew he owed his mother money that she gave him to buy the Dalton (Bowker) ranch; that he never said to Mrs. Duffy, or to his mother, that he owed her money and gave her the deed in satisfaction of the debt.* But he *did not testify that he did not owe her anything, or that he did not give the deed in satisfaction of the debt,* except by inference from his statement that the purchase-money of both ranches belonged to him.

Against the above is the testimony of appellant, Mrs. Duffy, Hill, and Lyell.

The first said: "I gave Peter all the money I made to buy the Bowker ranch. * * * I gave him three thousand eight hundred dollars (probably two thousand eight hundred dollars) to buy the Bowker Ranch with, of my own money. I gave him the money to put in the bank at the Bay, and I gave him the book. I had been twenty years earning the money. Whenever I made a little money I gave it to him to put in the bank." She then stated that he was sick for a long time; that she took care of him and paid his doctor's bills, and continued: "He gave me this ranch for my money that I let him have to pay for his other ranch. Mrs. Duffy did this business for me. She talked to Peter about it, and he agreed to give me this ranch for my interest in the ranch he lives on. He said he could not get his wife to sign a deed of his other ranch, and he would give me a deed of this that McKay had. He brought me the deed, and told me what it was for. * * * My son came with me from Illinois to California in 1864. He paid my passage, but I gave him some money to pay it. I brought with me one hundred and fifty dollars in gold and ten dollars in silver. I gave that money to him and he put it in

the bank. He and I earned more, and then he bought the property. We had a bank book. It was in his own name. I gave him all the money I had to put along with his own. I kept house. My son lived with me. I used to work out the house rent.

Hill testified that before purchasing the Bowker ranch respondent stated to him that he was going to buy a ranch: witness told him about the Bowker place, and told him it could be bought for four thousand dollars. Both went to look at it. Respondent told witness he had some money with him, but not enough to pay for the ranch; that his mother had some, and could pay three thousand dollars down. Respondent did not say how much he had.

Lyell knew that appellant kept house for her son before his marriage.

Mrs. Duffy testified that she knew appellant advanced money to respondent to purchase the Bowker ranch—knew she worked and saved money for six years, while he was sick and unable to do anything; that afterwards, for six years, she did the housework on the ranch, which entitled her to good wages. Witness said: "I heard Catherine Dalton and Peter converse about their business affairs. He stated to her in my presence that he knew his mother had advanced him money and rendered him services that entitled her to a home, and that he was willing to give it to her. It was after that he brought her the deed of the ranch held in the name of McKay. The conversation was on Peter's ranch. Dalton admitted to me that he had his mother's money or earnings, and all went to purchase the ranch. The amount I could not say; no amount was mentioned. Neither the mother nor the son knew the amount. There was no account kept between them. Peter did not say, and could not say, what amount he owed her, but was willing to give her a deed for that portion of the ranch for her services and money. About a week after their conversation he brought her the deed."

We have no hesitation in saying that respondent's unsupported testimony, opposed by appellant and by Mrs. Duffy, who were corroborated by Hill and Lyell, was wholly

insufficient to support the finding that appellant paid no consideration for the property in question, but held it in trust for respondent.    (See *Groff* v. *Rohrer*, 35 Md. 336.)

The order and judgment appealed from are reversed and the cause remanded.

, 14   431
: 19    94
: 6ˣ 842

14   431
21   411
32* 678

14   431
26   252
26   356