## HINCHMAN v. KELLEY et al.

(Circuit Court of Appeals, Ninth Circuit. January 16, 1893.)

### No. 61.

1. EQUITY—LACHES—WHAT CONSTITUTES.
   An assignee of one claiming to be cestui que trust of the vendee named in an executory contract to convey land brought suit to establish a trust in such land 19 years after the vendor's death, and 6 years after the death of the vendee, the alleged trustee,—a period exceeding the statutory period of limitation. There was no written evidence of the trust. It did not appear that its enforcement had been requested in the lifetime of either party to the contract, or that the trust was ever admitted by the vendee's executors, and no explanation of the delay was made. *Held,* that there was such laches as would justify a court of equity in refusing its aid. 49 Fed. Rep. 492, affirmed.

2. SAME—DEMURRER.
   When laches affirmatively appears on the face of a bill, advantage may be taken thereof by demurrer.

Appeal from the Circuit Court of the United States for the Western Division of the District of Washington.

In Equity. Bill by Walter Hinchman against George O. Kelley and Andrew C. Smith, executors and trustees under the last will and testament of Edward S. Smith, deceased, and the North Olympia Land Company, to establish a trust in land. The bill was dismissed on demurrer. 49 Fed. Rep. 492. Complainant appeals. Affirmed.

C. S. Fogg, (W. H. Doolittle, on the brief,) for appellant.

Galusha Parsons and E. T. Dunning, (Parsons & Corell and John C. Stallcup, on the brief,) for appellees.

Before McKENNA, Circuit Judge, and HAWLEY and MORROW, District Judges.

HAWLEY, District Judge. This appeal is taken from an order of the circuit court in the district of Washington sustaining a demurrer and dismissing the bill of complaint. Hinchman v. Kelley, 49 Fed. Rep. 492.

The bill, in substance, alleges that in February, 1872, one Ira B. Thomas held the legal title to certain land, described in the bill, and was apparently the owner thereof; that in fact the land was then owned by Philo Osgood, and the legal title was vested in Thomas in secret trust for Osgood; that the Lake Superior & Puget Sound Company, a corporation, through its agent, Edward S. Smith, in good faith, and without notice of the said trust, contracted for and

purchased of Thomas and of his wife, Sarah L. Thomas, said land, for the sum of $3,600, and the said Thomas and his wife then and there executed and delivered to the Lake Superior & Puget Sound Company, by and through its agent, Smith, an agreement to sell and convey to Smith the said land, which agreement was duly recorded; that this money was advanced to Smith by said corporation, and that it was the real and beneficial party in interest in making said purchase; that on the 9th of October, 1872, the said Ira B. Thomas died intestate, leaving surviving him his wife, Sarah L. Thomas, and one son; that the wife was appointed administratrix of his estate, and the same has been fully settled, and the administratrix discharged; that proceedings were had in the superior court of New York, wherein Philo Osgood was plaintiff and Sarah L. Thomas and her son were defendants, and resulted in a decree declaring that Ira B. Thomas held said land and the legal title thereto in trust for Philo Osgood; that, in pursuance of said decree, said Sarah L. Thomas and her son executed and delivered to said Osgood a quitclaim deed conveying said land to him, which deed was recorded in Thurston county, Wash., where said land is situated; that thereafter the said Osgood and his wife executed and delivered a quitclaim deed of said land to one Philo Remington; that by divers quitclaim deeds the land was conveyed to several parties, and on the 1st of November, 1889, to the North Olympia Land Company, a corporation, one of the defendants; that all of said deeds were duly recorded; that the said Edward S. Smith died December 31, 1885, without having conveyed said land or assigned the said agreement to the Lake Superior & Puget Sound Company, but that by virtue of the trust before mentioned he delivered said contract to it; that said Smith died testate, leaving his property to his executors and trustees, parties defendant herein; that the said Smith at all times "admitted that said money was furnished by said company, and used by him as aforesaid, and that he held said contract and interest in said land in trust for said company;" that on the 3d of January, 1891, the Lake Superior & Puget Sound Company conveyed said land to the Whidby Land & Development Company, a corporation, and assigned the agreement before mentioned to it, and on the 20th of November, 1891, the Whidby Land & Development Company sold and conveyed the land, and assigned the agreement to complainant, Hinchman; that Osgood and all the parties who procured the quitclaim deeds "had full, complete, and actual notice and knowledge of all the matters and things in this complaint set out;" that complainant's grantor demanded of the executors and trustees of said Smith that they execute and deliver to it a deed of conveyance of said land, and assign to it the agreement before mentioned, so as to vest in it the title and ownership to said land, which they refused to do; that the North Olympia Land Company claims to have some title to said land, and thereby clouds and slanders complainant's right, title, and interest in said land; that said land is vacant and unimproved, and is not in the actual possession of any one. Complainant prays that said Ira B. Thomas be decreed to have held said land in trust, with power of sale, for Philo Osgood; that the Lake

Superior & Puget Sound Company be decreed to have furnished the money to said Edward S. Smith which he paid to said Ira B. Thomas for said contract and land, and that said Smith, in procuring said contract and land, acted as the agent and trustee of said company; that said trust be declared, and that complainant be decreed to be the absolute owner of the land, and that his title thereto be established and quieted; that defendants, and each of them, be restrained and forever enjoined from setting up or claiming any right, title, or interest therein; "and for such other, further, and additional relief as may be just and equitable."

Can this action be maintained for the enforcement of the trust? Is the right of action barred by lapse of time? Was the grantor of appellant, the Lake Superior & Puget Sound Company, guilty of such laches as to deprive it of the right to maintain this action? Can laches or lapse of time be pleaded in bar to an action for the enforcement of a trust of the character set out in the bill? There is no averment in the bill that the cestui que trust ever requested the enforcement of the trust during the life of Thomas, or during the life of Smith, its alleged trustee. No explanation is given as to why the suit was not brought in their lifetime, nor any reason given why the commencement of the action was delayed for such a long period of time after their death,—19 years after the death of Thomas, and 6 years after the death of Smith. There is no averment that the executors of Smith have ever admitted the trust. No written contract is alleged to be in existence as evidence of the trust. The assignment of the trust was not executed by the Lake Superior & Puget Sound Company until nearly six years after the death of its alleged trustee, and long after the statutory period of limitation, under the law of Washington, had fully run. Courts of equity have always refused to give any aid to stale demands when the parties seeking relief have slept upon their rights, and acquiesced for a long period of time, and have repeatedly declared that nothing can call a court of equity into activity but conscience, good faith, and reasonable diligence. Laches and unreasonable neglect are always discountenanced. This defense is peculiar to courts of equity, and is founded upon grounds of public policy, and is often based upon the mere lapse of time, and the staleness of the claim, in cases where no statute of limitations directly governs the case; the courts acting sometimes by analogy of the law of limitations, and sometimes upon their own inherent doctrine of discouraging antiquated demands by refusing to interfere where there has been gross laches in prosecuting alleged rights. This general rule is admitted. Its application to the facts of this case is, however, denied. Every case must, of course, depend upon its own peculiar facts. While it is true that one ground most frequently mentioned for the enforcement of the general rule, to wit, the possession of the party against whom the demand is made, and long and unreasonable acquiescence in the assertion of adverse rights, does not exist in this case, yet there are other grounds that are directly applicable to the facts of this case that have been recognized as equally controlling in favor of the rule. One of the particular reasons which have induced the courts to

refuse to act is the difficulty of ascertaining the necessary facts to make it safe for a court of equity to exercise its judicial power, and this is especially so in a case like the one under consideration, when the means of resisting the trust, if unfounded, cannot be obtained on account of the death of the parties. In all cases where the complaining party has slumbered over his rights for a long period of time, with no obstacle in the way to prevent him from asserting them, until the evidence upon which such rights might be questioned and overthrown is lost, and all the original actors are dead, and their affairs left to heirs or representatives, it is deemed meet and proper that the law, in the exercise of its equitable jurisdiction, should presume it to be unjust, and refuse to allow the complainant to be heard. The peace and safety of society and the property rights of the general public demand this protection. Prevost v. Gratz, 6 Wheat. 498; McKnight v. Taylor, 1 How. 168; Jenkins v. Pye, 12 Pet. 241. A failure to exercise reasonable diligence to enforce the trust, or the omission to specifically state the inpediments to an earlier prosecution of the claim or demand, is another special reason for the application of the general rule. Badger v. Badger, 2 Wall. 87; Sullivan v. Railroad Co., 94 U. S. 811; Godden v. Kimmell, 99 U. S. 211; Landsdale v. Smith, 106 U. S. 394, 1 Sup. Ct. Rep. 350.

The principles applicable to the case at bar are clearly stated in 2 Story, Eq. Jur. § 1520a, as follows:

"It is often suggested that lapse of time constitutes no bar in cases of trust. But this proposition must be received with its appropriate qualifications. As long as the relation of trustee and cestui que trust is acknowledged to exist between the parties, and the trust is continued, lapse of time can constitute no bar to an account or other proper relief for the cestui que trust. But where this relation is no longer admitted to exist, or time and long acquiescence have obscured the nature and character of the trust, or the acts of the parties or other circumstances give rise to presumptions unfavorable to its continuance, in all such cases a court of equity will refuse relief upon the ground of lapse of time, and its inability to do complete justice. This doctrine will apply even to cases of express trust, and, a fortiori, it will apply with increased strength to cases of implied or constructive trusts."

After a careful review of the decisions upon this question, we are of opinion that the North Olympia Land Company, upon the facts alleged in the bill, has the right to rely upon the well-settled principles of equity that time and long acquiescence, the want of diligence, the failure to assign any reason for delay, and other acts of the parties, sufficient to raise the presumption that the Lake Superior & Puget Sound Company had abandoned its claim, or that it was in some manner arranged or compromised prior to its assignment to complainant, have deprived complainant of asserting any rights in the premises in a court of equity.

It affirmatively appearing from the averments of the bill that complainant is not entitled to any relief by reason of the laches and unreasonable delay of the Lake Superior & Puget Sound Company, the objection was properly taken by a demurrer. Maxwell v. Kennedy, 8 How. 210; Brown v. County of Buena Vista, 95 U. S. 159; Bank v. Carpenter, 101 U. S. 568; Speidel v. Henrici, 120 U. S.

387, 7 Sup. Ct. Rep. 610. Upon a careful examination of all the facts alleged in the bill, and of the authorities applicable to such facts, we are of opinion that the court did not err in sustaining the demurrer. The judgment of the circuit court is affirmed.