## COONEY *v.* PEDROLI

### No. 2659

May 5, 1925.                                    235 P. 637.

1. EQUITY—DELAY, TOGETHER WITH CIRCUMSTANCES CAUSING A DISADVANTAGE, CONSTITUTES "LACHES."

While lapse of time is one of the elements of "laches," another and very important one is that the delay works some disadvantage to the one who interposes laches as a defense, and the circumstances which may work a disadvantage depend on facts in each case.

2. EQUITY—DEATH IS A CIRCUMSTANCE TO BE CONSIDERED IN CONNECTION WITH DELAY IN DETERMINING WHETHER CLAIM IS BARRED BY LACHES.

Death of a party, who could have explained a transaction, is a material circumstance to be considered in connection with lapse of time in determining whether a claim is barred by laches.

3. TRUSTS—ACTION AGAINST ADMINISTRATRIX TO ESTABLISH TRUST IS BARRED BY LACHES, WHERE INTESTATE HELD PROPERTY AS SOLE OWNER FOR 22 YEARS.

Where intestate had continuously managed and disposed of property inherited by plaintiffs and intestate, as if he were the sole owner for 22 years, reinvested the rents and profits without objection from plaintiffs, and had not accounted during this entire period, *held* that suit against intestate's administratrix seeking to establish a trust in the property inherited, and accumulations is barred by laches.

See (1, 2) 21 C. J. sec. 219, p. 233, n. 30; sec. 230, p. 237, n. 10; (3) 39 Cyc. p. 601, n. 27.

APPEAL from Sixth Judicial District Court, Humboldt County; *James A. Callahan,* Judge.

Suit by Mary E. Cooney and another against Louise Pedroli, administratrix of the estate of Charles Pedroli, and another. From a judgment for plaintiffs, and an order denying a new trial, defendants appeal. **Reversed, with directions to enter judgment for defendants. Rehearing denied.** (SANDERS, J., dissenting.)

*L. O. Hawkins, Prince A. Hawkins,* and *Price & Hawkins,* for Appellants:

Defense of laches and equitable estoppel should have been upheld. Stale demands will not be aided where claimant has slept upon his rights for so long and under such circumstances as to make it inequitable to enter upon inquiry as to validity thereof. Kleinclaus v. Dutard, 81 P. 516; Cook v. Ceas, 82 P. 370; Wadleigh v. Phelps, 87 P. 93.

Where relation of trust is no longer admitted to exist or time and long acquiescence have obscured character of trust, or acts of parties or other circumstances give rise to presumptions unfavorable to its continuance, courts of equity will refuse relief upon ground of lapse of time and inability to do complete justice. Cahill v. Superior Court, 78 P. 467; Story Eq. Jur. 1520A.

Equity will not aid party whose claim is destitute of conscience, good faith, and reasonable diligence. Mackall v. Casilear, 137 U. S. 556.

No issue of partnership is made by pleadings, but where it exists, partner who manages farm for benefit of himself and copartner is entitled to reasonable compensation. Duley v. Duley, 226 P. 40; Emerson v. Durand, 24 N. W. 129; Griggs v. Clark, 23 Cal. 427.

After lapse of many years evidence to establish resulting trust must be clear, strong, and unmistakable, since doctrine of laches is applicable. 13 Enc. Ev. 144–146.

*Thos. A. Brandon,* for Respondents:

In Miller v. Walser, 42 Nev. 497, court said that statute of limitations had not run and by reason

thereof strong circumstances must exist to require application of doctrine of laches. Burden is on respondents to show from suitable averments in complaint that such circumstances exist.

Relationship of parties, recognition of debt or other circumstances may repel presumption of laches. Same evidence prevents presumption of laches and defense of statute of limitations. Vaughn v. Tate, 36 S. W. 748; Hovey v. Bradbury, 44 P. 1077; 10 R. C. L. 936.

Lapse of time is permitted in equity to defeat only acknowledged right of claimant to avoid evidence of presumption that right has been abandoned. It never prevails when presumption is outweighed by facts. Nelson v. Carrington, 6 Am. Dec. 519; 10 R. C. L. 402.

Where one of several heirs enters into or holds possession of land on death of ancestor his possession will in general be considered as possession of his coheirs for their benefit. In order to render his possession adverse, there must be decisive acts on his part amounting to ouster or disseizin. No mere act of ownership will render his possession adverse. 1 Cyc. 1080; 39 Cyc. 36.

When business is bequeathed to two persons who continue it, they become partners without any formal agreement and property is partnership property. 30 Cyc. 368.

## OPINION

By the Court, COLEMAN, C. J.:

This is a suit in equity brought by the respondents to obtain a decree establishing that they are the owners of an undivided two-thirds interest in all the property possessed by Charles Pedroli at the time of his death. The respondents are a brother and a sister of the deceased Charles Pedroli. The appellant is the administratrix of his estate. A demurrer to the amended complaint was overruled and appellant answered. Most of the allegations in the amended complaint are denied in the amended answer, and in addition eight separate defenses are interposed. Judgment was rendered in

favor of respondents and a motion for a new trial was denied. From the judgment and order denying the motion for a new trial this appeal is taken.

As we reached the conclusion that the demurrer should have been sustained, it will be necessary to set out in this opinion substantially the allegations of the amended complaint.

The appellant, Louise Pedroli, was appointed and qualified as the administratrix of the estate of Charles Pedroli, deceased, on March 30, 1920, and is now such administratrix. On or about the 29th day of September, 1896, Celeste Pedroli died intestate in the county of Humboldt in this state and left estate therein consisting of horses, cattle, farming equipment, and about 400 acres of land, together with improvements on said land and water rights appurtenant thereto, all of which was community property, and situated in said Humboldt County. He left surviving him a widow, Felecitia Pedroli, and three children, Charles Pedroli, then aged 29 years, and now deceased, Julius Pedroli, a son, then aged 24 years, and Mary E. Pedroli, a daughter, aged 20 years. Thereafter, Felecitia Pedroli was appointed and qualified as the administratrix of the estate of Celeste Pedroli, and after due and legal proceedings the estate hereinafter described, together with the sum of $3,681, also belonging to the estate, was by decree of court distributed as follows: An undivided one-half thereof to the surviving widow, and one-sixth to each of said surviving children.

On the death of the father, Charles Pedroli, without objection on the part of his brother and sister, now Mary Cooney, the respondents herein, assumed and entered into the exclusive management and control of the property. (It is alleged that such property was by the said brother and sister left in the care, custody, and control of Charles Pedroli.) Continuously thereafter and until the time of the death of Charles Pedroli he managed and controlled the property and exercised dominion over it, and handled, traded, sold, and other-

wise disposed of the same, and the rents, issues, and profits and increase thereof, in his own name and in like manner as though he were the sole owner thereof, but always, it is also alleged, subject to the rights of his brother and sister, and as their agent and trustee in so far as their rights and interests were affected thereby, and for their use and benefit.

Felecitia Pedroli died intestate on or about the 6th day of September, 1911, at Bodio, Republic of Switzerland, leaving estate of her undivided one-half interest in the property left by her deceased husband, and in the increase to the personal property and additions to the real estate. Her surviving heirs were the said children. Charles Pedroli was appointed and qualified as administrator of her estate on or about the 19th day of February, 1912, and entering upon the duties of his trust as such took possession of all the real and personal property belonging to the estate, remained and continued to remain in possession from the time of his appointment until his death on the 12th day of January, 1919.

On the 9th day of July, 1912, at the request and prayer of Charles Pedroli as administrator, the estate of Felecitia Pedroli was by decree of court distributed as follows, to wit: An undivided one-third thereof to each of said children, which decree provided in part that, upon the production of satisfactory vouchers by the administrator that he had paid all of the sums of money due from him, and delivered all the property of the estate to the parties entitled, he be discharged from his said trust and that he and his sureties be released from all liability therefrom thereafter to be incurred on account of the administration of this estate. Charles Pedroli never paid or delivered the property described in the decree to his brother and sister and was never discharged from his trust, and without objection on their part retained possession and control of all thereof, together with the rents, issues, and profits thereof from the time of his appointment to the time of his death.

It is alleged that during the time from the date of the
death of his father to the death of Charles Pedroli in
January, 1919, the latter received and had said prop-
erty in his possession and under his control and manage-
ment together with rents, issues, profits, and increase
thereof, and possessed, controlled, sold, and disposed of
the same without objection on the part of his brother
and sister, as their agent and trustee, as though the
same were his sole and separate property, but not
adversely to their interests therein or in derogation of
their rights thereto, but that all times he admitted and
recognized their right as the owners of an undivided
two-thirds interest in the property and the rents, issues,
profits, and increase thereof, that all of the property
was either the original property belonging to the estate
of Celeste Pedroli and the estate of Felecitia Pedroli,
or was acquired by Charles Pedroli out of the rents,
issues, profits, and increase of the property of those
estates while he was acting as the agent and trustee of
his brother and sister; that an undivided two-thirds
interest of the same is the property of the brother and
sister.

It is alleged that Charles Pedroli never at any time
accounted to the brother and sister concerning his
management, control, and disposition of their interest
in the property; that they permitted him to act as their
agent and trustee with the full faith and confidence in
his business management and integrity in the bona fide
belief that he was more competent in that respect than
either of them to manage the same to the best advantage
and greatest profit to himself and them; that they
believed that he would account fully and honestly to
them at any time they or either of them made on him
a demand therefor; that for these reasons they never
made a demand on him for an accounting and were
always willing to leave the control, management, and
disposition of the property in his hands with full faith
and confidence in his judgment and integrity.

It is alleged that the defendant, Louise Pedroli (appel-
lant here), as administratrix of the estate of Charles

Pedroli, deceased, and personally, claims some right, title, or interest in and to said two-thirds of the property belonging to his brother and sister, which claim is adverse to them and is without foundation in law or equity; that she has no right, title, or interest in and to the two-thirds of the property belonging to them. It is alleged that since the death of Charles Pedroli all of the two-thirds of the property belonging to them has come into the hands of said administratrix of his estate, who is now holding, managing, and controlling the same, together with the rents, issues, profits, and increase thereof, as trustee for said Julius Pedroli and Mary Cooney for their use and benefit.

Among the grounds stated in the demurrer to the amended complaint are: (1) That the amended complaint does not state facts sufficient to constitute a cause of action against the defendants or either of them; (2) that it appears upon the face of the amended complaint that the cause of action therein set forth, if any ever existed, was barred at the time of the commencement of the action, by the laches of the plaintiffs, and under the doctrine of equitable estoppel.

The nature of this suit is purely equitable. The substance of the claim as averred in the complaint is that during all of the years that Charles Pedroli was in possession, management, and control of the property from the death of his father until his own death, he was acting as a trustee for his brother and sister, the respondents, as to their interest in the property and in the increase and profits thereof. A decree is demanded to that effect, and that the respondents be declared the owners of said interest, their title to such quieted against appellant, and for an accounting from her for her control and management of such interest from the time of the death of Charles Pedroli.

1. The doctrine of laches has been universally accepted in courts of equity. In an early English case Lord Camden declared:

"A court of equity, which is never active in relief against conscience, or public convenience, has always

refused its aid to stale demands, where the party has slept upon his right, and acquiesced for a great length of time. Nothing can call forth this court into activity, but conscience, good faith, and reasonable diligence; when these are wanting the court is passive and does nothing. Laches and neglect are. always discountenanced, and therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court." Smith v. Clay, 2 Ambler's Reports, 645; 3 Browne's Reports, p. 639 in note.

The. principle thus announced that mere lapse of time may constitute laches has not been recognized generally by modern courts of equity as embracing the only element of that defense. It appears from the cases, with few exceptions, that, while lapse of time is one of the elements, another and very important one is that the delay has worked some disadvantage to the one who interposes the defense of laches. A concise and accurate statement of the doctrine of laches, and one which has been often quoted with approval, was made in Chase v. Chase, 20 R. I. 202, 37 A. 804, in which the court said:

"Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes, but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief."

It would be difficult, if not impossible, to state the various circumstances which in conjunction with the lapse of time may constitute laches. Every case must depend upon its own circumstances. Whenever the passage of time has brought in its train anything that

works to the disadvantage of a party and makes it doubtful if equity can be done, relief will be denied.

"Several conditions may combine to render a claim or demand stale in equity. If by the laches and delay of the complainant it has become doubtful whether the adverse parties can command the evidence necessary to a fair presentation of the case on their part, as, for instance, where parties interested and the witnesses have died in the interim, or if it appears that they have been deprived of any advantage they might have had if the claim had been seasonably insisted on, or if they be subjected to any hardship that might have been avoided by reasonably prompt proceedings, a court of equity will not interfere to give relief, but will remain passive; and this, although the full time may not have elapsed which would be required to bar a remedy at law." 10 R. C. L. p. 400.

Considering the defense of laches in Miller v. Walser, 42 Nev. 497, 518, 181 P. 437, 444, this court said:

"Any circumstances tending to obscure the truth of the matter, as the loss of witnesses through efflux of time, may prompt a court of equity to apply the doctrine of laches. In fact, if it appears that the adverse party has lost any advantage he might have retained if the claim had been asserted with reasonable promptness, or exposed to any injury through inexcusable delay, a court of equity will not interfere to give relief to the dilatory claimant. Every case must depend upon its own peculiar circumstances."

2. It is a very material circumstance to be considered in connection with the lapse of time that death of those who could have explained the transaction has intervened before the claim is made. Hinchman v. Kelley, 54 F. 63, 4 C. C. A. 189; Rives v. Morris et al., 108 Ala. 527, 18 So. 743; Taylor v. Slater, 21 R. I. 104, 41 A. 1001; Kleinclaus v. Dutard, 147 Cal. 245, 81 P. 516; Pomeroy's Eq. Rem. p. 44. In the last work cited the author says:

"It is settled in this state by the two California cases last cited that the defense of laches may be raised by demurrer, the defense being in substance, as said in

one of the cases, that the bill does not show equity, or, in the language of our statute, that the complaint does not state facts sufficient to constitute a cause of action."

3. An examination of the complaint in view of these principles clearly reveals its lack of equity. The complaint shows a great lapse of time, 22 years, from the creation of the alleged trust. During all of this time Charles Pedroli was in possession of the property openly and notoriously exercising dominion over it as though it were his sole and separate property. He managed, controlled, and disposed of it, and acquired and invested the profits from it in his own name. From the profits he acquired other property to the extent that at the time of his death the original property belonging to the estate of his father had been increased in amount from 400 acres of land and 100 head of stock cattle, and 20 tons of hay, to 880 acres, 300 head of cattle, 75 head of calves, 200 tons of hay. In addition thereto he acquired 15 bonds of the Lovelock Drainage District; 12 shares of the stock of the Bank of Italy, San Francisco, California; Liberty bonds of the par value of $3,600; a promissory note with accrued interest thereon; and a life insurance policy on the life of the deceased for the sum of $5,000 payable to his estate as the beneficiary thereof, and cash in the amount of $12,000.

Beyond the bare statement in the complaint that Charles Pedroli was the trustee of his brother and sister, and that he at all times admitted and recognized their right, there is nothing in the complaint to support the claimed trust relation. All of his acts alleged have a contrary significance. He did everything in his own name and managed the property and the increase as if it were his own. No act of recognition is alleged. He invested the profits in other property and took the same in his own name without consulting the respondents. During the entire period of 22 years he paid nothing to the respondents. He rendered no account of his management of the property to them, nor was any accounting demanded of him by either of them. No reason is alleged in the complaint for respondents' long

delay in making any claim to the property or asserting any interest as to Charles Pedroli's management of their share of it or desire to enjoy any of the profits from it, except that Charles Pedroli was more competent to manage it for the best interests of himself and them, and that he was honest and upright in all his business affairs, and that they believed he would account fully and honestly as to his management and control and disposition of the property to respondents at any time they made a demand on him.

It seems incredible, however, that in all of these years and when the property was being managed profitably by Charles Pedroli that respondents should have no desire to share in any portion of the profits. Any fraud on the part of Charles Pedroli is entirely negatived by the complaint. All of his acts were open and notorious and consistent with the absolute ownership. These facts, together with the prolonged silence of the respondents during the lifetime of Charles Pedroli concerning their alleged interest in the property, present a case of grave doubt as to the existence of the trust claimed. His death places his administratrix at a disadvantage so obvious as to call for the application of the doctrine of laches against the respondents, who have slept on their alleged rights for a period of 22 years. Even if the trust relation were admitted the futility of entering on an investigation after such a lapse of time when the trustee is dead, to determine equitably what portion belonged to his estate and what portion belonged to respondents, is apparent. A court of equity would be unable, under the circumstances, to do justice to the parties. The injustice, if any, must fall upon the negligent.

As said in Kleinclaus v. Dutard, supra:

"The circumstances of this case are such as to make it apparent that a court could not hope to do justice between these parties, were the trust relation clearly shown, and this constitutes another ground for the application of the doctrine of laches, for the difficulty is due entirely to the inexcusable delay."

The facts in the Dutard case are strikingly parallel to the case at bar. It was held that the merits of a claim of the existence of an express trust under which a son carried on his father's business for the benefit of the family would not be considered after an unexplained lapse of 35 years, when the son was dead, and where the son had conducted the business during the period without recognizing the interest of the alleged beneficiaries, or rendering an account or paying any money to them, except in the support of his mother, and by his personal efforts and diligence had accumulated a large fortune from the small capital invested in the business by his father, and it would be impossible for the court to do justice between the parties, even if the claim should be established. A demurrer on the ground of laches was sustained. The complaint in the instant case shows a stronger case for the application of the defense of laches than the Dutard case.

For the reasons given, the judgment is reversed, and the lower court is directed to sustain the demurrer and enter judgment for the appellant.

SANDERS, J., dissenting.

Louise Pedroli in her individual and representative capacities interposed a demurrer to the complaint, and for demurrer alleged, first, that the complaint did not state facts sufficient to constitute a cause of action; second, that the cause of action, if any ever existed, was barred by the laches of the plaintiffs and under the doctrine of equitable estoppel; third, that the cause of action, if any ever existed, was barred by the statutes of limitations; fourth, that the cause of action was void under the statute of frauds. The principal contention in connection with the demurrer is that the same should have been sustained upon the ground of laches and under the doctrine of equitable estoppel.

Counsel for appellants assert that the trial court after argument filed no written opinion upon the overruling of the demurrer, but concede that the trial judge did say, from the bench, in overruling the demurrer "The question of the statute of limitations and also the question

of laches can better be presented at the trial of this matter on the merits." It is argued that such may have been the reason for overruling the demurrer, but that it is no legal reason and does not excuse or justify the order overruling it. In this counsel are mistaken. A court in disposing of a demurrer to a bill in equity has a certain amount of judicial discretion to be exercised in furtherance of justice, and where the nature of the case is such as to make it probably more conducive to the cause of justice to decide such case only after answer and proof, it is within the discretion of the court to refuse to determine it on demurrer, though the demurrer may appear to be technically well taken. 10 R. C. L. 475.

It is well settled that a demurrer to a bill may be overruled with liberty to the defendant to insist upon the same defense by answer, if the allegations of the bill are such that the case ought not to be decided without answer being put in. Kansas v. Colorado, 185 U. S. 125, 22 S. Ct. 552, 46 L. Ed. 838. The trial court was evidently of the opinion that the case made by the complaint was a proper one for overruling the demurrer upon the ground of laches with liberty to the defendants to insist upon the same defense by answer. Sabre v. United Traction, etc., Co. (C. C.) 156 F. 79. Since the defendants set up laches as a defense and a trial was had, I am of opinion that this court should at least look to the evidence before determining whether the court abused its judicial discretion in refusing to determine the case on demurrer. Be this as it may, my associates take the view that conceding the charges of the complaint to be true, it is an absolute, certain and clear proposition that the complaint does not show equity, or, in other words, does not state facts sufficient to constitute a cause of action. I dissent from this conclusion.

It is contended that the demurrer should have been sustained and the action dismissed, under all authorities, and especially so under the decision in Kleinclaus v. Dutard, 147 Cal. 245, 81 P. 516, claiming that no two cases so nearly parallel in point of facts and law can be found in the books. In this I am unable to agree.

Conceding the correctness of the decision and the elementary principles of equity applied to the facts in the Dutard case, I make the same distinction in the two cases as was made by Justice Kerrigan in the case of Fleming v. Shay, 19 Cal. App. 276, 125 P. 761. The learned justice pointed out that the authorities lay down the rule that when positive evidence exists, which proves that the defendant has all along recognized the plaintiff's rights, delay on the part of plaintiff in bringing the suit will be excused. 18 Am. & Eng. Ency. of Law, 111. "The continued acknowledgment," reads 16 Cyc. 174, "by the defendant of plaintiff's right is generally sufficient to account for delay by plaintiff in bringing suit to enforce it."

The plaintiffs allege in their complaint in this case that Charles Pedroli, deceased, possessed, controlled, and managed the property described without objection of plaintiffs as agent and trustee, as though the same were the sole and separate property of Charles Pedroli, but not adversely to their interest therein or in derogation of their rights thereto, but at all times the said Charles Pedroli admitted and recognized the right of plaintiffs, and each of them, as such owners of said undivided interest in and to the property and the rents, issues, profits, and increase thereof.

Justice Kerrigan points out in Fleming v. Shay, supra:

"In the case of Peebles v. Reading, 8 Serg. & R. (Pa.) 484, 494, it was held that fourteen years would not be a reasonable time to enforce a trust, unless the trust was kept up by declarations from time to time.

"A similar declaration to the one here was considered in the case of Kleinclaus v. Dutard  *  *  *; but there it appeared that Dutard for thirty-five years had 'dealt with all the property acquired as absolutely his own. He carried on a produce and commission business in his own name. He invested and reinvested the profits thereof in his own name in all kinds of property, in several different states, accumulating a great fortune. He never recognized any other person as having any interest therein.' For those and other reasons stated in the opinion, the court said that the complaint, taken

as a whole, presented a case 'where every act of the alleged trustee was openly and notoriously hostile to the claim of plaintiff'; that consequently no such relation between the parties was evidenced by the complaint as justified the plaintiff in disregarding those acts and relying upon any declaration of Dutard."

The distinction between the present complaint and the Dutard case is made plain when it is considered that the court in that case pointed out that the complaint, taken as a whole, presented a case where every act of the alleged trustee was openly and notoriously hostile to the claim of plaintiff, whereas in the present complaint it is alleged and the demurrer admits that Charles Pedroli at all times admitted and recognized the rights of plaintiffs as owners of an undivided interest in and to the property and the rents, issues, profits, and increase thereof. If this allegation be true his representative after his death is bound by his admissions. Hovey v. Bradbury, 112 Cal. 620, 44 P. 1077.

I concede the force in the argument that the plaintiffs' delay in commencing action, and particularly until after the death of Charles Pedroli, when much important evidence might be lost to defendants, is indicative of bad faith and renders the claim stale and inequitable. In view, however, that there is nothing in the present complaint inconsistent with the alleged acknowledgment by Charles Pedroli of plaintiffs' right and interest in the property at all times, and of the fact that the parties were brothers and sister and that plaintiffs reposed confidence and trust in Charles Pedroli (10 R. C. L. 402), I cannot agree that it clearly and affirmatively appears upon the face of the complaint that the cause of action is barred by laches.

I am of opinion that the demurrer was properly overruled.

ON PETITION FOR REHEARING

June 17, 1925.

*Per Curiam:*

Rehearing denied.

SANDERS, J., I dissent.