## SU LEE *v.* PECK

No. 2686

November 5, 1925.                                   240 P. 435.

1. WITNESS—TESTIMONY OF MEMBERS OF CHINESE SOCIETY AS TO
   STATEMENTS OF DECEASED DONOR OF PROPERTY IN QUESTION
   HELD ADMISSIBLE.

   In action to quiet title, brought on behalf of a Chinese
   religious society, where members of society testified as to state-
   ments made by deceased donor of property to society, *held* that
   witnesses' interest was not of a nature rendering them incom-
   petent at common law, and hence were not within purview of
   exception in Rev. Laws, sec. 5419, that no persons shall be
   allowed to testify when other party to transaction is dead.

2. WITNESSES—PARTIES SUING ON BEHALF OF SOCIETY TO WHICH
   THEY BELONGED NOT LIABLE FOR COSTS, AND NOT INCOMPETENT
   UNDER STATUTE TO TESTIFY AS TO DECEASED'S STATEMENTS.

   In an action to quiet title, brought by plaintiffs on behalf
   of Chinese religious society, under Rev. Laws, sec. 5001, *held*
   that Chinese society was real party in interest, and plaintiffs
   were nominal parties only, were not liable for costs in view
   of section 5385, and hence having no interest in action were
   not incompetent under section 5419 to testify as to alleged
   statements made by deceased donor as to property in question.

3. GIFTS—EVIDENCE OF WITNESSES SUFFICIENT TO PROVE GIFT OF
   PROPERTY TO CHINESE RELIGIOUS SOCIETY.

   In an action to quiet title, where plaintiffs bringing action
   on behalf of Chinese religious society claimed property by
   reason of gift from former owner, *held* evidence of Chinese
   witnesses was sufficient to prove such gift of property to the
   society.

4. GIFTS—PAYMENT OF TAXES BY RECORD OWNER DID NOT CON-
   CLUSIVELY REFUTE PLAINTIFFS' CLAIM OF GIFT TO PROPERTY, OR
   OVERTHROW CLEAR AND SATISFACTORY PROOF THEREOF.

   In an action to quiet title, brought on behalf of Chinese
   religious society, where plaintiffs claimed property in question
   had been given to them by former owner, *held* payment of
   taxes by record owner did not conclusively refute plaintiffs'
   claim of gift or overthrow clear and satisfactory proof of such
   gift.

5. GIFTS—CHINESE RELIGIOUS SOCIETY NOT REQUIRED TO PAY TAXES
   ON PROPERTY USED FOR RELIGIOUS WORSHIP, AND NONPAYMENT
   THEREOF DID NOT MILITATE AGAINST THEIR CLAIM OF GIFT.

   In an action to quiet title brought on behalf of Chinese
   religious society, the fact that such society did not pay taxes
   did not militate against their claim that property had been
   given to them by gift, inasmuch as under Rev. Laws, sec. 3621,
   the property was exempt from taxation.

6. GIFTS—GIFT CANNOT BE PROVED BY EVIDENCE OF EQUIVOCAL
   NATURE, BUT SUCH EVIDENCE MUST BE CLEAR AND CONVINCING.

   The gift of property cannot be proved by evidence of an
   equivocal nature, but such evidence must be clear and con-
   vincing.

7. Gifts—Evidence Held Insufficient to Show Gift to Donee by Cotenant of Donor.

In an action to quiet title, brought on behalf of Chinese society, where plaintiff claimed property by reason of gift from one M., *held* that evidence, though sufficient to show gift of entire premises from M., was insufficient to show gift from M.'s cotenant to plaintiff.

8. Adverse Possession—Tenancy in Common—Donee of Land, Entering Into Possession under Gift from One Cotenant Claiming Entire Property, Held to Have Acquired Title by Adverse Possession.

Where Chinese society entered into possession of property under gift of entire plot from one cotenant and claimed property as its own, openly and notoriously, this amounted to a disseizin of the other cotenant, and constituted an adverse holding, ripening into title by adverse possession on expiration of statutory period.

9. Adverse Possession—Cotenant Out of Possession, Aware of Possession by Stranger Making Improvements Thereon, Charged with Notice of Hostile Intent of Such Possession.

Where cotenant out of possession was aware that stranger was in actual and exclusive possession of entire premises, making valuable improvement thereon, *held* that was sufficient notice to put him on inquiry, and he was charged with notice of hostile intent of such possessor, inasmuch as he would have discovered such possession was one under claim of right under gift from other cotenant if he had inquired.

10. Adverse Possession—Payment of Taxes by Adverse Claimant Not Essential Element of Adverse Possession where Claimant a Religious Corporation, and Payment of Taxes Had Not Become a Statutory Requirement.

Payment of taxes by an adverse claimant *held* not an essential element of adverse possession where property was used for religious purposes, and, at the time the disseizin took place, the statutory requirement of payment of taxes had not become an element of adverse possession.

See (1, 2) 40 Cyc. p. 2245, n. 96; p. 2249, n. 18; p. 2277, n. 39, 41; p. 2281, n. 70; p. 2282, n. 77; p. 2291, n. 32; (3, 4, 5, 6, 7) 28 C. J. sec. 19, p. 627, n. 34; p. 628, n. 35; sec. 82, p. 676, n. 33; sec. 84, p. 680, n. 70, 82; (8) 38 Cyc. p. 34, n. 16; p. 35, n. 17; p. 77, n. 71; 37 Cyc. p. 940, n. 85; p. 942, n. 94; 2 C. J. sec. 59, p. 77, n. 71; sec. 355, p. 185, n. 50; sec. 417, p. 205, n. 23 (new).

Appeal from Second Judicial District Court, Washoe County; *Geo. A. Bartlett,* Judge.

Action to quiet title by Su Lee and Charlie Bi Yen, suing for themselves and others, as members and on behalf of the Lin Hing Gungsha, or Joss House Society,

of Reno, Nevada, against F. J. Peck and others. From a judgment for plaintiffs, defendants appeal. **Affirmed. Rehearing denied.**

*Cooke, French & Stoddard,* for Appellants:

Evidence of unmistakable intention of donor to make gift is essential requisite of gift inter vivos. 28 C. J. 625, 627, 628, 676, 678.

Ordinarily neither tenant in common can. bind other unless his act is previously authorized or subsequently ratified. 38 Cyc. 101; 7 C. L. 879.

Individual Chinese being liable for costs, were personally interested with other members of Joss House Society in result of this action. Counsel's contention in trial court that at common law they are not incompetent as witnesses is exactly contrary to authorities. 40 Cyc. 2244; 12 Enc. Ev. 779.

Actions should be prosecuted in name of real party in interest, except as otherwise provided. Rev. Laws, 4986.

No party shall be allowed to testify where other party to transaction is dead. Rev. Laws, 5419.

Agent who arranges contract for his principal is party to transaction. Bright v. Water Co. (D. C. Nev.), 254 Fed. 175.

If interest disqualifies, members or stockholders of corporation are disqualified. 12 Enc. Ev. 787; Ashbury v. Hicklin, 81 S. W. 390.

Objection is timely, if made as soon as ground therefor is apparent, though made after testimony is given. Sharon v.. Minnock, 6 Nev. 377.

Possession under permission of owner, in absence of act of disseizin, does not ripen into title, however long continued. To be adverse, possession must be such as to give notice to owner that it is held under claim of right. McDonald v. Fox, 20 Nev. 364; 2 C. J. 264.

Case having been remanded for new trial, we are entitled to bring in new evidence and urge legal questions not before presented. On retrial after reversal,

former record is no part of later record, unless offered. Rev. Laws 5319; 4 C. J. 1240; Landis v. Ry. Co., 154 N. W. 607.

Deposition of witness as to what owner told him about transaction years after it happened, did not open door to evidence as to what owner told party at transaction, especially when neither was present at conversation of owner with other. Rev. Laws, 5419; 40 Cyc. 2339.

*Harwood & Tippett*, for Respondents:

Plaintiff is religious society, and individual Chinese. though members of it, are not interested parties within meaning of statute, Rev. Laws, 5419. There is some conflict as to agent or stockholder of commercial concern, but authorities are practically without dissent that interest of member of religious or charitable society is too uncertain and remote to disqualify him. Crosby v. Presbyterian Church, 99 S. W. 584; Shortz v. Unagast (Pa.), 3 Watts & S. 45; Sorg v. Congregation, 63 Pa. St. 156.

If, with full knowledge of incompetency of witness, counsel allows him to testify, he takes risk of adverse evidence and waives right to have it excluded. Sharon v. Minnock, 6 Nev. 377; King v. Haney, 46 Cal. 560.

Objection to competency of witnesses was waived not only by cross examination, but also by calling witness to rebut. Wigmore on Evidence, par. 19.

Objections not urged on first trial cannot be put forward on subsequent trial. Points necessarily involved cannot be used to string out litigation indefinitely. Wigmore, 318.

Haskell, coowner with Manning, was present at transaction, assisted in staking out lot, was fully informed, and was bound just as Manning was. 7 R. C. L. 882; 38 Cyc. 111.

Individual Chinese sued in representative capacity. Property was given "to Chinese boys for Joss House." It is only when suit is vexatiously brought that such

representative is liable for costs.   28 R. C. L. 474; Jones on Evidence (3d ed.), par. 775.

Payment of taxes has no significance, as religious society's property is exempt.

Society claimed under color of title, followed by improvements and possession since 1878.  Title by such possession and limitation was clearly established, and is as effectual as if by deed.   3 Abbott's Trial Evi. 1878;   Ricard v. Williams, 7 Wheat. (U. S.) 49, 105; 13 Enc. Ev. 536, 606, 617, 618.

## OPINION

By the Court, DUCKER, J.:

This is an action to quiet title to two lots and the Chinese Joss House thereon, situated in Chinatown in the city of Reno.  Judgment was rendered in favor of plaintiffs.  The plaintiffs as indicated above are suing for themselves and others on behalf of the Lin Hing Gungsha Society, or Joss House Society, of Reno.

The plaintiffs claim title by gift to the society in 1878 from A. H. Manning and D. H. Haskell.  The defendants claim title through mesne conveyances from the same source.  Plaintiffs also claim title by adverse possession. Plaintiffs' case rests principally upon the testimony of Chinese witnesses.  Their testimony as to title relates to statements made to them by Manning, which plaintiffs claim evidence a gift of the lots to the society.  One of the witnesses also testifies to certain acts of Manning and his coowner, Haskell, which are also claimed to be evidence of such gift.  After the first Chinese witness, one Hi Wah, had testified to a statement of Manning's in this regard, and had been examined on direct cross, redirect and recross, and another witness having been called and sworn, counsel for defendants, having first obtained an admission from counsel for plaintiffs that Manning was dead and had been for some years, moved to strike out all of Hi Wah's testimony relating to statements claimed to have been made by Manning to him as to the gift of the property on the ground that the

witness was incompetent to testify by reason of section 5419 of Rev. Laws. The motion was denied by the court, and its action is assigned as error. Thereafter seasonable objections were made to the testimony of the other Chinese, Su Lee and Charlie Bi Yen, concerning Manning's statements, on the same ground, which were overruled by the court. These rulings are also assigned as error. Section 5419 of the Revised Laws, invoked by defendant, reads as follows:

"All persons, without exception, otherwise than as specified in this chapter, who, having organs of sense, can perceive, and perceiving can make known their perceptions to others, may be witnesses in any action or proceeding in any court of the state. Facts which, by the common law, would cause the exclusion of witnesses, may still be shown for the purpose of affecting their credibility. No person shall be allowed to testify:

"1. When the other party to the transaction is dead.

"2. When the opposite party to the action, or the person for whose immediate benefit the action or proceeding is prosecuted or defended, is the representative of a deceased person, when the facts to be proven transpired before the death of such deceased person; provided, that when such deceased person was represented in the transaction in question by an agent who is living, and who testifies as a witness in favor of the representative of such deceased person, or, when persons other than the parties to the transaction, claiming to have been present when the transaction took place, testify as witnesses in favor of the representative of such deceased person, in such case the other party may also testify in relation to such transaction.     *     *     * "

Do the facts in this case show that the witnesses are persons disqualified to testify by reason of the first prohibition of the statute: Admittedly Manning was dead when they gave their testimony, and the transaction involved was his alleged gift to the plaintiffs. It appears that Chinatown in Reno was destroyed by fire in 1878. After the fire, according to the testimony of Hi Wah and Su Lee, Manning wanted the Chinamen to

move where Chinatown is now located, and in substance told the witnesses that he would give them a piece of ground to build their Joss House on if they would move. In addition, Su Lee testified that he and Manning and Haskell went to the ground and staked off the present site of the Joss House. Charlie Bi Yen testified that about 30 years ago Manning told him that he gave the property to the China boys for a Joss House. It appears that Hi Wah and Charlie Bi Yen are members of the Joss House Society.

It is obvious that the objections to the testimony of the witnesses, if good, are so by reason of the first exception in the statute, for the second class of exceptions made have no application to the facts. The defendants are not the representatives of the deceased Manning. The witnesses, as members of the society in whose behalf the action is prosecuted are all interested in the result of the action. While the exception does not expressly state that no interested party shall be allowed to testify when the other party to the transaction is dead, yet such, we think, was the clear intention of the legislature. This is apparent from the purpose of the statute, which was to remove the common law rule disqualifying parties and interested persons as witnesses, with the exceptions mentioned. To construe the exception literally, without reference to the general object sought to be attained by the statute, would create a condition which, as stated in Bright v. Virginia and Gold Hill Water Co. (D. C.) 254 F. 175, would practically make it impossible to prove a claim against a dead man. In Burgess v. Helm, 24 Nev. 242, 51 P. 1025, this provision of the statute was construed to mean that no person who had a direct interest in the result of the action shall testify when the other party to the transaction is dead. The language of the provision is broad enough to include all persons interested in the result of the action whether they are parties to it or not. But the evidence discloses that the Joss House Society is an unincorporated religious society, and it was so held to be in a former decision of this court. Su Lee v. Peck, 40

Nev. 20, 160 P. 18. Counsel for plaintiffs therefore contend that, as members of a religious society, the witnesses had no such interest in the result of the action as brought them within the class of persons intended to be excluded by the provision of the statute. This was the ground on which the trial court based its action permitting the testimony, and in accepting it as ample proof of the gift. This seems to have been the common law rule as to members of such associations. On this phase of the common law, Mr. Jones, in his work on Evidence, says:

"Members of charitable, educational and religious corporations had not such pecuniary interest as to be disqualified as witnesses. Hence, the members and officers of churches, school districts, private educational institutions and the like were competent to testify at common law." Jones on Evidence (2d ed.), sec. 732.

In this regard Prof. Greenleaf says:

"Yet the members of charitable and religious societies, having no personal and private interest in the property holden by the corporation, are competent witnesses in any suit in which the corporation is a party." 1 Greenleaf on Evidence (16th ed.), p. 864.

See Hershy v. Clarksville Institute, 15 Ark. 128; Davies v. Morris, 17 Pa. 205; Matter of Kip, 1 Paige (N. Y.), 601; Hill v. School Dist. No. 2 in Millburn, 17 Me. 316; Cooper v. Sisters of Providence, 16 Ind. 164; Sorg v. German Congregation, 63 Pa. 156.

1. We are of the opinion that the legislature, in removing the common law disability of witnesses as to parties and interested persons, and in excluding certain persons from the operation of the act, intended to exclude such only as would have been excluded by common law rules. In other words, where the other party to the transaction is dead, the person whose testimony is offered stands exactly as he would have stood if section 5419 had never been enacted. Applying these principles, Hi Wah, Su Lee, and Charlie Bi Yen were not disqualified as witnesses. Their interest as members of the religious society in whose behalf the action is

prosecuted is not of the direct legal nature as would have rendered them incompetent at common law, and is not therefore within the purview of the exception to the statute.

2.  Counsel for appellants contend that whatever may be the rule as to Hi Wah in this particular, it cannot apply to Su Lee and Charlie Bi Yen, who are parties to the action.  It is insisted that, as parties to an action were incompetent witnesses at common law, Su Lee and Charlie Bi Yen are rendered incompetent by the exception to the statute.  The general rule at common law as to. parties is as above stated, and there is some authority holding that all parties to the record, nominal or otherwise, regardless of interest, were incompetent to testify at common law; but by the greater weight of authority, as we deem it, an exception existed as to nominal parties with no real interest in the action.  40 Cyc. 2245, and cases cited in note 96.  Taking this view, the court in Barker v. Ayers, 5 Md. 202, 209, 210, said:

"There can be no doubt that the authorities establish it as a general proposition that a party to the suit is not a competent witness; but it is equally true, they declare the reason of the rule to be, that he has an interest either in the object of the suit or in the costs. As, therefore, the law is said to be founded in reason, and what is not reason is not law, it would seem to follow, necessarily, that when the reason of a legal rule ceases to exist the rule does not apply.  That the mere fact of being a party does not render him incompetent to testify, is most unequivocally announced in Lizardi et al. v. Cohen et al., 3 Gill [Md.] 430, and the reason for excluding him is, as explicitly stated to be, his interest in the result, either in regard to the claim or the costs.  On page 435, the opinion of Judge Washington, in Willings and Francis v. Consequa, Pet. C. C. 307 [Fed. Cas. No. 17, 767] is referred to, in which he speaks of a party being excluded as a witness, and states that the interest he has in the event of the suit, as to costs and the subject in dispute, 'lies at the foundation of the rule, and when that interest is removed the objection ceases to exist.'  The court also refer to the decision pronounced

by Chief Justice Tindal, in Worrall v. Jones, 7 Bing. 395, as maintaining the true and sound doctrine on this subject. The opinions of several other distinguished jurists are noticed, and the court says: 'When it appears that the party proposed to be examined is not responsible for the costs of the suit, and has no interest in the subject in dispute, and is willing to be sworn, he is not within the operation of the general rule.' "

In Paine v. Tilden, 20 Vt. 554, the court said:

"The mere objection, that the witness is a party to the record, when he has no interest in the event of the suit, or is called to testify against his interest, has been too often decided by this court to be of no force to be again brought in question. The very point now in judgment was expressly decided in Caledonia County in the case of Pierce et al. v. Lyman et al., and virtually in Sargeant v. Sargeant et al., 18 Vt. 371. The language of Chief Justice Tindal, in Worrall v. Jones, 20 E. C. L. 180, expresses the true state of the English law upon the subject. He says: 'No case has been cited, nor can any be found, in which a witness has been refused, upon the objection in the abstract, that he was a party to the record; on the contrary many have been brought forward, in which parties to the suit, who have suffered judgment by default, have been admitted as witnesses, against their own interest; and the only inquiry seems to have been, in a majority of cases, whether the party called was interested in the event of the suit, or not; and the admission or rejection of the witness has depended upon the result of this inquiry.' After such a declaration from so distinguished a judge in Westminster Hall, it would seem captious, not to say frivolous, to doubt the state of the English law upon this subject."

It is true that, in the leading English case quoted from in the foregoing opinion, the court decided the case upon the principle that a party to a suit, who has suffered judgment by default, and consents to be examined, and who is called against his own interest, is competent, but the court unequivocally states that a party to the suit, not interested in the event of the suit, was not incompetent.

Any interest in the result of a trial, if it was only a liability for costs, would render a party an incompetent witness at common law. As stated by Prof. Greenleaf:

"The rule, excluding parties from being witnesses, applies to all cases where the party has any interest at stake in the suit, although it be only a liability to costs." 1 Greenleaf on Evidence (16th ed.), p. 865.

In this regard counsel for appellants contends that Su Lee and Charlie Bi Yen, being parties to the suit, are liable for the costs, and are therefore within the exception of the statute. We take a different view. While they are parties plaintiff to the suit, it is plain that they are such only in a representative character. The society is the real party in interest. Their authority to sue is given by section 5001 of the Revised Laws, which, in the stated cases, gives one or more persons authority to sue or defend for all. The section reads:

"Of the parties to the action, those who are united in interest shall be joined as plaintiffs or defendants; but if the consent of any one, who should have been joined as plaintiff, cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or general interest of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all. Tenants in common, joint tenants, or coparceners, or any number less than all, may jointly or severally bring or defend or continue the prosecution or defense of any action for the enforcement of the rights of such person or persons."

In Branson v. Industrial Workers of the World, 30 Nev. 270, 95 P. 354, it was held that in the above section the legislature intended to make the equity rule as to joinder of parties, where the parties are numerous and it is impracticable to bring them all before the court, of permitting one or more to sue or defend for the benefit of all, available in an action at law; and that in such an action against voluntary, unincorporated associations, it is proper to sue the associations as such and join

a few natural persons, members of the association, to represent all the members.

The action in the present case was obviously brought under this statute. It is alleged as a reason for not joining other Chinese persons residing in Reno, Nevada, also members of the said society, that said other Chinese persons are too numerous to be joined as plaintiffs. Consequently Su Lee and Charlie Bi Yen are not liable for the costs, unless they were guilty of mismanagement or bad faith, which does not appear. They are persons expressly authorized to sue by section 5385 of the Revised Laws, and by the terms of the statute relieved from liability for costs. The section reads:

"In an action prosecuted or defended by an executor, administrator, trustee of express trust, or a person expressly authorized by statute, costs may be recovered as in an action by and against a person prosecuting and defending in his own right; but such costs shall, by the judgment, be made chargeable only upon the estate, fund, or party represented, unless the court shall direct the same to be paid by the plaintiff or defendant, personally, for mismanagement or bad faith in the action or defense."

The party represented, which in this case is a voluntary, unincorporated association, the Joss House Society, is expressly made liable for the costs. Having held that the witnesses were competent, it becomes unnecessary to determine plaintiffs' contention that the objection to Hi Wah's testimony came too late.

3-5.    The testimony of the Chinese witnesses, a summary of which has been stated, is sufficient to prove a gift of the property in question from Manning to the Joss House Society. In fact, on appeal from a former trial of this case, their evidence, which was practically the same as in this case, was held sufficient to show a gift. Su Lee v. Peck, supra. We deem it unnecessary to again analyze and state their testimony in detail. On the trial of the case it was proved by defendants that the assessment roll of Washoe County disclosed that from 1879 to 1914, inclusive, all taxes on the lots in

question had been paid by the owners of the record title. While the payment of taxes, on the lot was a circumstance tending to refute the claim of a gift, yet it was not conclusive. Carleton-Ferguson Dry Goods Co. v. McFarland (Tex. Civ. App.), 230 S. W. 208, 214. It is certainly not of sufficient weight to overthrow the clear and satisfactory proof of a gift inter vivos. The circumstance is, in fact, of little evidential value when considered in connection with the circumstances that from 1879 to 1907, on which last date the defendants Peck & Quinn obtained their deed, the lots were, for the purposes of assessment, valued together with 31 other contiguous lots at a low valuation. The amount of taxes paid during that period ranged from about $1 to $3 on each lot. The fact that the society paid no taxes on the property does not militate against the evidence showing a gift, for the Joss House, being used for religious worship, was exempt from taxation. Its furniture and equipment and the lot of ground on which it stood were also exempt. Section 3621, Rev. Laws.

6, 7. It is insisted that there is no evidence to show a gift from Haskell to the society. Haskell, according to the testimony of Su Lee, went with the witness and Manning and participated with the latter in staking off the lots by setting a post on each corner. When the witness was being examined, the court and counsel and court officials went with the witness to the premises, at which place the following testimony was given, to wit:

"The Court: Q. Where did Mr. Manning put stakes? A. Manning and Doc Haskell he put stakes down here.

"Mr. Harwood: Q. Go with your cane and show him where he put stake. A. (Witness indicated.)

"Q. They put one stake here? A. Yes, 25 feet away.

"The Court: Q. Now show us where he put another stake. A. Twenty-five feet wide (indicating).

"Q. Do you remember about where it was? A. He says about 25 feet wide from that point to that point (indicating).

"Q. But where the other stake there? A. Put a stake over there and one here.

"Q. Where did he put the other stakes? A. Way down the river."

On resuming the examination in court the following took place:

"Q. And who did you say went with you when you put down stakes? A. Manning and Doc.

"Q. Doc Haskell? A. Yes.

"Mr. Harwood: Q. What did Mr. Manning say when you went down there and put stakes on lot? A. Manning say, 'You like this lot?' I say, 'Yes, I like this lot.' 'All right; I come put a stake on each corner of house.'

"Q. Anything else? Anything more? A. He put stake every corner, 'You have this lot for Joss House,' you know."

This evidence is not sufficient to show a gift from Haskell of his interest in the premises. The evidence clearly shows that Manning gave the entire premises, but it does not appear that any of his statements in this regard were made in the presence of Haskell, and no statement of Haskell's concerning the transaction appears in the record. A gift cannot be proved by evidence of an equivocal character. To sustain a gift the evidence must be clear, convincing and unequivocal:

"A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift inter vivos. And this intention must be inconsistent with any other theory." 28 C. J. 627, 628.

8. While the evidence does not sustain a gift from Haskell, it does show that the society acquired title to his interest by adverse possession. Haskell's cotenant, Manning, did not give his undivided one-half interest in the property, but, on the contrary, gave the entire premises. The society entered into the possession of the whole, building its Joss House thereon, claiming the entire property as its own, peaceably, openly and notoriously. This, under the principle which we think must prevail, amounted to a disseizin of the cotenant, Haskell, and constituted an adverse holding, which, on the expiration of the time prescribed by statute, ripened into title by adverse possession.

This is certainly the law where a tenant in common conveys the entire title by deed to a stranger, and it is not apparent why a different principle should prevail in case of a gift. In 7 R. C. L. sec. 49, p. 854, the principle is thus stated:

"A conveyance to a stranger to the title, by one cotenant, by an instrument purporting to pass the entire title in severalty, and not merely such cotenant's individual interest, followed by an entry into actual, open and exclusive possession by such stranger under claim of ownership in severalty, amounts to a disseizin of the other cotenants, which if continued for the statutory period will ripen into good title by adverse possession."

In 1 Am. & Eng. Ency. of Law (2d ed.), p. 806, the law is stated as follows:

"A conveyance by one cotenant of the entire estate gives color of title, and if possession is taken under it, the grantee claiming title to the whole, it amounts to an ouster of the cotenants, and the possession of the grantee is adverse as to them."

The principle stated in the foregoing text is sustained by the great weight of authority. See cases cited in note 2 Am. & Eng. Ency. of Law, supra. Abernathie v. Con. Virginia Min. Co., 16 Nev. 260; Bogardus v. Trinity Church, 4 Paige (N. Y.), 178; Jackson v. Cole, 146 Ark. 565, 226 S. W. 513, 1064.

9. Haskell was aware that a stranger was in the actual and exclusive possession of the entire premises and had made valuable improvements thereon. This of itself was notice sufficient to put him on inquiry. If he had inquired he would have discovered that the society was in possession under a claim of right to the entire premises by gift from Manning. As said in Winterburn v. Chambers, 91 Cal. 170, 27 P. 658:

"A cotenant out of possession, in order to avail himself of the presumption attending the acts of a stranger in possession, must show that such stranger is his cotenant. There is no presumption of such contenancy, and in the absence of such showing, he is chargeable with notice of the real character of his claim."

**10.** The payment of taxes by the adverse claimant is not an essential element of adverse possession in this case. As previously stated, the Joss House was a building used for religious worship, and, as such, was exempt from taxation. On the other hand, the disseizin took place in 1878, and the period of five years required by statute had elapsed before the payment of taxes was made a statutory element of adverse possession.

The judgment is affirmed.

March 8, 1926.

*Per Curiam:*

Rehearing denied.