LOUISE LANIGIR, ANN CHAIX, MARGE ARDEN, THEODORE ARDEN, A MINOR, LYDIA RUSS, IVY LANIGIR AND THOMAS ARDEN, APPELLANTS, v. JOHN ARDEN, BETTY ARDEN AKA NONEY M. ARDEN, RESPONDENTS.

No. 4924

January 19, 1966          409 P.2d 891

*Vargas, Dillon, Bartlett & Dixon*, and *Robert W. Marshall*, of Reno, for Appellants.

*Belford & Anglim,* of Reno, for Respondent Betty Arden.

*Leslie B. Gray,* of Reno, for Respondent John Arden.

## OPINION

By the Court, THOMPSON, J.:

This case concerns title to approximately 10 acres of land near Reno, Nevada. The former owner, Philip Arden, died intestate in 1929, and title to the property vested equally in eleven surviving children as tenants in common, subject to estate administration. Philip's estate was closed on February 8, 1937, and a final decree of distribution was entered and recorded, showing devolution of a one-eleventh interest to each of the surviving

children. The action below was to quiet title. The plaintiffs are nine of the surviving children, and the widow and son of the tenth who died before this suit was started.[1] The defendant John Arden is the remaining surviving child of Philip, and the co-defendant Betty Arden is John's former wife.

The plaintiffs' claim to the property rests upon the February 8, 1937, decree of distribution and their assertion that, since that time no one has conveyed away his one-eleventh undivided interest as a tenant in common. The defendant Betty Arden asserts a valid record title to the property as a bona fide purchaser from her former husband and co-defendant John Arden. On July 29, 1960, John deeded the property to Betty, as required by the terms of a settlement agreement, incident to divorce. Betty, therefore, counterclaimed to quiet title. The defendant John Arden also asserts a valid record title to the property (until he conveyed it to Betty on July 29, 1960) by reason of two deeds: the first, dated February 6, 1937, signed and acknowledged by each of the surviving children (Philip, William, Theodore, John, Tom, Ann, Louise, Ivy, Lydia, Josephine and Mary) as grantors to Arthur P. Herrmann and Lena Herrmann, his wife, as grantees, and recorded at the request of John Arden on April 5, 1941, at 11:10 a.m.; the second, dated April 5, 1941, signed and acknowledged by the Herrmanns as grantors, to John Arden as grantee, and recorded at the request of John Arden on April 5, 1941, at 11:11 a.m. Furthermore, John and his co-defendant Betty each pleaded adverse possession, the statute of limitations, laches and estoppel by deed as affirmative defenses to the plaintiffs' assertion of title.

---

[1]The eleven surviving children were: Philip Arden, William Arden, Theodore Arden, John Arden, Tom Arden, Ann Chaix, Louise Lanigir, Ivy Lanigir, Lydia Russ, Josephine Gerbig and Mary Dittman. All were plaintiffs below, except John who was a defendant and Theodore who had died. Theodore's widow Marge and son Theodore were also plaintiffs. At the conclusion of plaintiffs' case in chief, Philip, Josephine and Mary withdrew, not wishing to assert any interest in the property. Thus eight of the original eleven plaintiffs remained. They lost below. All but William have appealed. For reasons mentioned later, the withdrawal of Philip, Josephine and Mary and the decision of William not to appeal, do not affect their interests in the property.

The lower court ruled in favor of the defendant Betty Arden and gave her a decree quieting title to the property. It believed that her record title was valid. Though not required to do so, the court also concluded that Betty had acquired title by adverse possession; that the plaintiffs were barred by limitations and laches; and that they were estopped to deny the validity of their deed dated February 6, 1937. This appeal followed. We hold that the lower court was wrong on every point, and reverse. We shall recite the relevant evidence as each issue is discussed.

1. Whether Betty Arden's record title is valid depends upon the effectiveness of the deed dated February 6, 1937, from the eleven surviving children as grantors to Arthur P. Herrmann and Lena Herrmann, grantees. Before the father's estate was closed, Mr. Herrmann advised the administrator that he, Herrmann, might wish to purchase the property. In anticipation of sale, the administrator caused the deed to be prepared and signatures obtained. As the eleven children were scattered, it took from February 6, 1937, to March 9, 1937, to secure all signatures. Meanwhile, Herrmann advised the administrator that he would not purchase. That advice was given the administrator before the estate was closed and before the acknowledged signatures of all grantors had been obtained. The estate was closed February 8, 1937. Some time later (exact date unknown, but apparently after March 9, 1937, when the last signature to the deed was acknowledged) the deed was left with the attorney who had been handling the estate. The document was never physically delivered to the Herrmanns. A consideration for that deed never passed from the Herrmanns to the administrator of the estate or to any of the named grantors. The Herrmanns do not recall ever having seen the deed, did not buy the property, and have never claimed any interest therein.

More than four years later, on April 5, 1941, the Herrmanns for some reason not disclosed by the record, were persuaded to execute a deed of this land to John Arden. John Arden procured the deed of February 6, 1937, from the attorney with whom it had been left and recorded

that deed on April 5, 1941, at 11:10 a.m. One minute later, the Herrmann-John Arden deed was recorded.

The tale just related is not disputed. Five of the eleven grantors named in the February 6, 1937, deed testified. Four were plaintiffs and the other, John Arden, a defendant. Mr. Herrmann also testified. All agree that the 1937 deed was prepared and signed, intending to effectuate a sale to the Herrmanns, and for no other purpose.[2] The grantors never intended for the deed to operate as a conveyance unless the Herrmanns purchased the property. Cf. McCord v. Robinson, 225 Ark. 177, 280 S.W.2d 222 (1955); Battle v. Anders, 100 Ark. 427, 140 S.W. 593 (1911). A sale did not occur. The grantors received no consideration for their deed. There is no showing that the attorney with whom the deed was deposited was authorized to deliver it to John Arden four years later, nor is there evidence of authority from those grantors to John Arden to record that deed.

A deed executed, acknowledged and recorded is presumed to have been delivered. Whoever questions the fact of delivery must overcome the presumption by clear and convincing evidence. Campbell v. Campbell, 368 Ill. 202, 13 N.E.2d 265 (1938); Klein v. Klein, 239 Iowa 40, 29 N.W.2d 163 (1947). John and Betty Arden contend that the lower court was justified in ruling that the presumption of delivery was not overcome here. We cannot agree. Though aware that an appellate court may not weigh conflicting evidence and, in doing so, substitute its view for that of the trial court, that doctrine does not govern this case. There is no conflict in the evidence received at trial on the material points we have mentioned. The lower court was compelled to accept the facts as we have related them. As such evidence was not diminished in value, impeached, contradicted or questioned, it must, as a matter of law, qualify as "clear and

---

[2]John Arden intimates that, sometime later (date unknown), his brothers and sisters agreed to give him the property. The trial court ignored that intimation. In any event, real property is not conveyed orally, nor may a court sensibly construe the 1937 deed to the Hermanns to be a deed of gift to John Arden.

convincing" evidence sufficient to overcome the presumption of delivery. Cf. Dalton v. Dalton, 14 Nev. 419 (1879). Accordingly, we hold the 1937 deed ineffectual as a conveyance from the grantors therein named to Arthur P. Herrmann and wife. It follows that the deed from the Herrmanns to John Arden is equally infirm and may not defeat the plaintiffs' claim to title.

As stated before, John Arden conveyed the property in controversy to Betty Arden on July 29, 1960. The lower court found that Betty was a bona fide purchaser without notice. We think that finding clearly erroneous. John deeded the property to Betty as required by their divorce settlement. However, before doing so he asked her to contact the other Arden children for their permission. Betty did contact some of them, and was notified by at least one of them that an interest was claimed. This, without more, was notice of facts sufficient to cause further inquiry by Betty, thereby destroying her present claim as a bona fide purchaser. Moore v. De Bernardi, 47 Nev. 46, 220 P. 544 (1923) ; Bailey v. Butner, 64 Nev. 1, 176 P.2d 226 (1947) ; Federal Savings & Loan Ins. Corp. v. Urschel, 159 Kan. 674, 157 P.2d 805 (1945) ; Blondell v. Turover, 195 Md. 251, 72 A.2d 697 (1950).

2.   As we do not agree with the lower court on the validity of Betty Arden's record title, we must turn to examine the affirmative defenses. If one of them is established, the judgment below must be affirmed.

*(A) Adverse possession.* From 1939 until the divorce in 1960 John Arden paid the taxes on the property. Since the divorce, Betty has paid them. After World War II, John and Betty lived on the property. In 1946 they built a garage and used it as their home. Later they built a home, barn, corrals and fences at a total cost of about $33,000. Most of the time they ran livestock, raised, cut and baled hay. From March 29, 1957, through February 29, 1960, they conveyed away five parcels. In a title controversy between strangers, a court

could find all requisites needed to establish the acquisition of title by adverse possession whether claiming under NRS 11.120, NRS 11.140 and NRS 11.070, or NRS 40.090; O'Banion v. Simpson, 44 Nev. 188, 191 P. 1083 (1920); Zubieta v. Tarner, 76 Nev. 243, 351 P.2d 982 (1960); Su Lee v. Peck, 49 Nev. 124, 240 P. 435 (1925). Rodgers v. Carpenter, 44 Nev. 4, 189 P. 67 (1920). Here, however, the title dispute is not between strangers. It is between co-tenants who are brothers and sisters. One requisite of adverse possession is hostility. Even as between co-tenants who are not related, the tenant out of possession may assume that the permissive possession of his co-tenant is amicable until notified that it has become hostile; and the evidence needed to show hostility or notice must be stronger than that required in a case between strangers. Wilkerson v. Thomas, 121 Cal. App.2d 479, 263 P.2d 678 (1953); Elder v. McClaskey, 70 F. 529 (6th Cir. 1895). Where, as here, the co-tenants also are brothers and sisters, the relationship is not unlike that of trust and, we think, demands that the tenant in possession openly disavow the claims of his brothers and sisters, and unequivocally make his claim of sole ownership known to them. Levy v. Ryland, 32 Nev. 460, 109 P. 905 (1910). John Arden never told his brothers and sisters that he claimed to be the sole owner. He so testified. Indeed, he acknowledged the interest of brother Bill by making provision for him in the divorce settlement with Betty. At that time, he also was aware that all brothers and sisters might assert an interest for he asked Betty to check with them. Clearly, John's state of mind was such that he did not believe that his possession of the property and the improvements placed thereon was a hostile possession in the thoughts of his brothers and sisters. Nor does the record intimate that any of the brothers and sisters believed John's possession to be hostile or adverse to their interests. Co-tenants who are brothers and sisters bear a fiduciary relationship to one another. Each is entitled to trust the other, and not question conduct unless its purpose is clearly made known. We adopt the rule of Levy v. Ryland, supra, as equally applicable to co-tenants who are brothers and

sisters. Accordingly, on this record, we must view John's possession as having been with the permission of his brothers and sisters, rather than adverse or hostile. Nor does the fact that John conveyed away small parcels change our view, for the first of such conveyances was on March 29, 1957, less than 5 years before this action was commenced. NRS 11.070; NRS 11.080. As the limitation period had not run, we need not decide whether conveyances of parts of the property by a co-tenant in possession, standing alone, would sustain a finding of hostility against a co-tenant brother or sister.[3] Cf. Witherspoon v. Brummett, 50 N.M. 303, 176 P.2d 187 (1946) where the co-tenant in possession conveyed away the entire tract to a stranger who took actual, open and exclusive possession; also O'Banion v. Simpson, 44 Nev. 188, 191 P. 1083 (1920).

*(B) Laches.* Especially strong circumstances must exist to sustain the defense of laches when the statute of limitations has not run. Miller v. Walser, 42 Nev. 497, 181 P. 437 (1919). Each case must be examined with care. Cooney v. Pedroli, 49 Nev. 55, 235 P. 637 (1925). Perhaps the most important inquiry is whether the party urging laches has been prejudiced by his opponent's delay in asserting rights. We perceive no prejudice here and no good reason to prefer the equitable doctrine of laches to the applicable statute of limitation and, by doing so, deny a remedy to the co-tenants out of possession. Witnesses were available to each side. The history of the Arden family property was traced from the time of its acquisition to the time of trial. Prejudice may not be claimed for lack of evidence occasioned by the delay. It seems best to resolve this case on its merits, for we can ascertain the merits from the witnesses who related the family story. The merits are not hidden from us.

---

[3] The lower court ruled that the plaintiffs were barred by the limitations of NRS 11.190 which concerns actions "other than those for the recovery of real property." In Kerr v. Church, 74 Nev. 264, 329 P.2d 277 (1958), clear dictum advises that the applicable statute of limitation to a quiet title action is NRS 11.080. That statute specifies a 5-year limitation period. See also NRS 11.070.

As the record tells the story, there is no reason to avoid coming to grips with the case simply because time short of the legal limitation period has passed.

*(C) Estoppel by deed.* The lower court concluded that the plaintiffs, by reason "of the execution and delivery of the deed dated February 6, 1937, are estopped to deny its validity." By definition the doctrine of estoppel by deed does not touch this case. That doctrine, sometimes referred to as the doctrine of after acquired title, estops a grantor from asserting that he acquired title after and not before the conveyance. It forbids the grantor from denying his misrepresentation as to title contained in the deed. Tiffany, Real Property, 3d ed., ch. 29, § 1230. Here all agree that the grantors named in the deed of February 6, 1937, had title to the property. No one contends that they were without title on that date and later acquired it. No one contends that there was a misrepresentation as to title. Clearly the doctrine of estoppel by deed is not involved.

For the reasons expressed we conclude that the heirs of the estate of Philip Arden each own an undivided one-eleventh interest as tenants in common in the real property described in the judgment entered below, except Theodore Arden, deceased, whose one-eleventh interest descended to his heirs, and John Arden whose one-eleventh interest was conveyed to Betty Arden by deed dated July 29, 1960. John and Betty Arden are accountable to the plaintiffs below for all sums received from those who purchased parcels of the inherited real property, and are also entitled to credit for the improvements of and payments made upon the property described in the judgment below. As mentioned in footnote 1 of this opinion, some of the heirs of Philip Arden, who were plaintiffs below, withdrew from the litigation. The withdrawal did not effectuate a transfer of their undivided interests in the property. Accordingly, their title is the same as those who did not withdraw as parties plaintiff. We therefore reverse the judgment below, and remand

this cause for further proceedings in accordance with the views expressed herein.

BADT, J., and ZENOFF, D. J., concur.