KEITH H. PETERSON, APPELLANT, v. CITY OF RENO, ET AL., RESPONDENTS.

No. 5328

CITY OF RENO, APPELLANT, v. PIO A. MASTROIANNI, ET AL., AND FRED A. NORMAN, ET AL., RESPONDENTS.

Nos. 5329 and 5330

January 18, 1968 · 436 P.2d 417

*Thornton, Guinan and Griswold,* and *Bible, McDonald, Carano and Wilson,* all of Reno, for Keith H. Peterson.

*Clinton E. Wooster,* Reno City Attorney, and *Roy Lee Torvinen,* of Reno, for City of Reno.

*Streeter, Sala & McAuliffe,* of Reno, for Mastroianni, Hudgens and Grignon.

*Leslie B. Gray and Wayne Capurro,* of Reno, for Liddell.

*Frank R. Petersen,* of Reno, for Solari.

*Peter I. Breen,* of Carson City, for Norman.

## OPINION

By the Court, THOMPSON, C. J.:

These are consolidated appeals from multiple judgments entered by the district court in a quiet title action brought by the City of Reno, and concern portions of the abandoned Virginia and Truckee Railway right of way in Reno, Nevada. The appellant Keith H. Peterson appeals (No. 5328) from judgments against him and quieting title to certain portions of the

abandoned right of way in the City of Reno, Myrtle Grignon, Pio and Virginia Mastroianni, Robert and June Hudgens, Fred Norman, Parker Liddell, and Camill and Julia Solari. The appellant City of Reno appeals (Nos. 5329, 5330) from judgments against it quieting title to certain portions of the abandoned right of way in the Mastroiannis, the Hudgenses, and Fred Norman. We affirm the judgments against Peterson (No. 5328), and reverse the judgments against the City of Reno (Nos. 5329, 5330).

1.  The Peterson Appeal:  In 1872, the Virginia and Truckee Railway acquired by deed from four grantors (Haydon, Hatch, Lake, and Deremer) an interest in a strip of land which it used as a railroad right of way. The language of each grant deed described the interest conveyed as "all that certain right of way over and through the land * * * described * * * and all that certain piece of land hereinafter described for the purpose of said right of way."

The Deremer deed, however, left a gap in the strip of land supposedly conveyed, which the V.&T. nevertheless was using as part of the right of way. In 1919, Mahalia Johnson as Deremer's successor in interest, in order to fill the gap, deeded the omitted portion to the V.&T. in the following terms: "* * * does * * * grant, bargain, sell, convey, remise, release and forever quitclaim, unto the said party of the second part, and to its successors and assigns, all the right, title, interest, estate, claim and demand, both at law and in equity, as well as in possession as in expectancy, * * * of, in and to that certain lot, piece, or parcel of land * * *."

In 1950, the V.&T. ceased railroad operations and removed its tracks. Three years later it conveyed all of its rights and interest in the land formerly used as a right of way to the State of Nevada, which began suit to quiet title to the right of way as against the successors in interest of the original grantors. In that case the district court ruled for the State against all of the defendants, only some of whom appealed the decision to the Nevada Supreme Court. Such appeal was successful, this court holding that the language of the original granting deeds to V.&T. did not convey a fee simple interest in the land, but merely an easement "for the exclusive use and control of the land so long as the right of way exists." City Motel, Inc. v. State, 75 Nev. 137, 143, 336 P.2d 375 (1959). Accordingly, by reason of nonuse and removal of the tracks, "* * * an easement for railroad purposes is abandoned * * * and the owner of the dominant fee thereafter holds such fee, and also

the fee of the servient estate to the center thereof free of the burden of the easement." Id. at 144.

The judgment of the district court was reversed with directions to enter judgment in favor of the appellants (with exceptions not pertinent to the case at bar). Id. at 148. Except for the City of Reno, all respondents to this appeal (No. 5328), or their predecessors in interest, were named defendants in the City Motel case against whom trial court default judgments were entered for failure to appear, and none was a party to the appeal in that case.

In 1961, after the City Motel case had been decided against the State, the State reconveyed its rights in the old right of way to V.&T., and the V.&T. trustees, in 1964, conveyed their rights and interest in the same property to Keith H. Peterson, the appellant herein.

Peterson does not dispute the fact that the appellants in the City Motel case, or their successors in interest, own portions of the west half of the old V.&T. right of way abutting their property. Indeed, such was the effect of the holding of City Motel. However, Peterson does claim the remaining western half of the right of way under the 1964 deed to him from the V.&T. trustees on the theory that none of the defendants in the City Motel case (except those who appealed from the district court judgment) may have the benefit of the Supreme Court reversal of that judgment, and that such defendants are still bound by the district court default judgments entered against them.

Peterson, as successor to the interest of the V.&T., also claims the property embraced by the 1919 Mahalia Johnson deed. The City of Reno and the Mastroiannis dispute this claim.

By reason of the recited occurrences two legal issues are presented by the Peterson appeal. First, the effect of the reversal of the district court judgment in City Motel on the rights of the defaulted, non-appealing defendants; and, second, the legal effect of the deed from Mahalia Johnson to the Virginia and Truckee Railway Co. We turn to discuss these questions.

━━━━━━ ■

(a) When the litigation concerns title to or possession of real property and the issues to be resolved rest upon the same factual foundation, it is Nevada law that a reversal of a district court judgment at the instance of some who lost in the trial court inures to the benefit of others who lost (whether by default or otherwise), and did not appeal. Bullion Mining Co. v. Croesus Gold & Silver Mining Co., 3 Nev. 336 (1867); In

re Forsyth's Estate, 45 Nev. 385, 204 P. 887 (1922); dictum in Lanigir v. Arden, 82 Nev. 28, 37, 409 P.2d 891 (1966).[1]

The overriding issues decided by this court in City Motel, Inc. v. State, supra, were whether V.&T. acquired a fee or an easement by virtue of the Haydon, Hatch, Lake, and Deremer deeds, and, if the latter, what happened to the strip of land upon abandonment. These are questions of law, the resolution of which is unaffected by whether some of the named defendants chose to participate in the litigation, and others did not. Accordingly, we hold that the respondents to this appeal, or their predecessors in interest, who were defendants in the City Motel case against whom trial court default judgments were entered, are entitled to the benefit of the Supreme Court reversal of that case.

(b) Appellant Peterson next asserts that the 1919 Mahalia Johnson deed conveyed title to the strip of property therein described to the V.&T. in fee simple absolute and that, as successor to the interest of the V.&T. therein, his claim of fee title to that property is valid and must be honored.

Although the granting clause of the Johnson deed may be read to convey fee title, a controlling Nevada statute then in effect precluded a grantee railroad company from acquiring such an interest. That statute [NCL 6257][2] provided for rever-

---

[1]The 1921 California decision of Lake v. Superior Court, 200 P. 1041, seems to be contra to the dictum of Lanigir v. Arden, supra. We do not agree with Lake, and note that its significance as precedent in California is doubtful in view of a later decision. Osborn v. Osborn, 267 P.2d 333, 338 (Cal. 1954).

[2]NCL 6257 read: "Any railroad company, organized under the provisions of this act, or any railroad company organized under any law of this state, which shall accept the provisions of this act, as herein provided, is authorized to enter upon any land for the purpose of surveying the line of its proposed railroad, the company being responsible for any damage occasioned by such; and such company is also authorized to acquire, purchase, and hold any real estate, or any right, title, or interest therein, which may be necessary or proper for the purpose of the construction or maintenance of the track or tracks, water stations, depots, machine or workshops, turntables, or any other building or structure necessary for such railroad; but such company shall not hold such real estate, or any right, title or interest therein, required or used solely or mainly for the construction or maintenance of the track or tracks of said railroad, beyond the time of the legal existence of said company, nor after the location of said track or tracks has been changed therefrom, nor after said company shall have failed, or ceased, to the use of the same for the maintenance of such track for the space of five years continuously; but in each of such cases, the said real estate, and all the right, title, and interest therein, shall revert to the person or persons, and his or their assigns, from whom the same was acquired by said company."

sion of title to the grantor or his successors upon (among other events) the cessation of railroad operations and the removal of its tracks. In 1950, the V.&T. ceased its railroad operations and removed all of its tracks.

The statute effectively limited the railroad's interest to that of an easement [Midwestern Developments, Inc. v. City of Tulsa, 259 F.Supp. 554 (1966); Gutensohn v. McGuirt, 147 P.2d 777 (Okla. 1944); State v. Union Electric Co., 148 S.W.2d 503 (Mo. 1941)] and, since all conveyances through which Peterson now claims title to the strip of land deeded by Johnson [the 1953 conveyance by V.&T. to the State; the 1961 conveyance by the State to V.&T.; and the 1964 conveyance by V.&T. to Peterson] came after a statutory reversion of title had taken place, none is effective. The V.&T. had no interest to transfer.[3]

For reasons expressed we affirm the judgment of the district court against Peterson (No. 5328).

2. The City of Reno appeal:   This matter concerns separate judgments entered below in favor of the respondents Pio and Virginia Mastroianni, Robert and June Hudgens, and Fred Norman, quieting title to certain portions of the east half of the abandoned V.&T. right of way against the claim of the City of Reno thereto.

Each respondent is the owner of portions of the west half of the right of way by reason of this court's decision in City Motel, Inc. v. State, and each seeks to sustain trial court judgments enlarging his ownership to include the east half of the right of way abutting the west half acquired by virtue of the City Motel ruling. On the other hand, the City of Reno's claim rests upon its ownership of Holcomb Avenue, a dedicated street which abuts the abandoned right of way to the east.

The original grants to the V.&T. (the 1872 Haydon, Hatch, Lake, and Deremer deeds) as construed by the City Motel case, mean that the original grantors, or their successors, continued to own the underlying fee to the center of the V.&T. right of way. Subsequent to these grants, and prior to the 1950 right of way abandonment, the east side successors in interest to the original grantors filed plats under the 1905 statute (now NRS 116.060) providing: "Such maps and plats when made, acknowledged, filed and recorded with the county recorder shall be a dedication of all such avenues, streets, lanes, alleys, commons or other public places or blocks, and sufficient to vest the fee of such parcels of land as are therein expressed,

---

[3]In City Motel, Inc. v. State, supra, it was not necessary to determine the effect of NCL 6257 (see footnote 1 of that opinion).

named, or intended, for public uses for the inhabitants of the town or for the public for the uses therein named or intended."

The plats so filed and recorded dedicated Holcomb Avenue to the City of Reno. It is the City's contention that the statutory dedications of Holcomb Avenue were grants in fee from grantors who owned the underlying fee to the center of the previously granted V.&T. right of way. Hence, the issue: What is the effect of a street dedication pursuant to NRS 116.060 abutting, at the time of dedication, a railway right of way which is later abandoned?

A street dedication under NRS 116.060 is "sufficient to vest the fee" for the "public uses therein named or intended." Charleston Plaza, Inc. v. Board of Education, 79 Nev. 476, 387 P.2d 99 (1963); Kowalchuk v. Hall, 80 Nev. 3, 388 P.2d 201 (1964). The "fee" so vested is a determinable fee simple which may continue forever, but is liable to be determined by some future event, such as abandonment or vacation, in which case title shall revert to abutting property owners. NRS 278.480(5); Sowadzki v. Salt Lake County, 104 P. 111 (Utah 1909); White v. Salt Lake City, 239 P.2d 210 (Utah 1952); Mochel v. Cleveland, 5 P.2d 549 (Idaho 1930). Thus, the title of the City of Reno to Holcomb Avenue is a determinable fee title.

We have not found case authority on point to guide our determination of the issue presented by this appeal. Persuasive arguments are offered by the adversaries. For example, the individual respondents each insist that since the interest of the City of Reno in Holcomb Avenue is merely a determinable fee interest, the statutory dedication by which it acquired that interest should not be deemed to confer upon the City the rights of an abutting owner. They point out that their interests which abut the east half of the abandoned right of way to the west and which they acquired by reason of the City Motel decision, are fee simple absolute interests and carry the full rights of abutting owners. The City of Reno counters by directing our attention to the fact that at the very same instant the respondents acquired title to the west half of the abandoned V.&T. right of way, "someone" to the east of the abandoned right of way acquired title to the east half thereof. That "someone" must be either the City of Reno by reason of its determinable fee ownership of Holcomb Avenue which abuts the abandoned right of way to the east, or the owners of the property abutting Holcomb Avenue to the east by virtue of their reversionary

interests in the underlying fee of Holcomb Avenue.[4] In no event, argues the City, may the respondents lay claim to the east half of the right of way, since to honor such a claim would jump title into the hands of strangers.

As we see it, the position of the City of Reno is sound. There exists no legal basis for the respondents' claim to the east half of the abandoned right of way since the "abutting owners" to the east acquired title to that half at the same instant the "abutting owners" to the west (respondents or predecessors) acquired title to the west half. Thus, one would expect the contest over title to the east half of the right of way to be between the City of Reno, on the one hand, and property owners abutting Holcomb Avenue to the east, on the other. As mentioned in footnote 4, those property owners have not asserted a claim. However, as between the City of Reno and the respondents, the City is clearly entitled to victory.

Although property owners abutting Holcomb Avenue to the east have not asserted a claim, it is best that we indicate our view with respect to their interests and the interest of the City of Reno to those portions of the east half of the abandoned right of way which we now have before us, so that titles may be stabilized.

In our opinion the determinable fee interest of the City of Reno in Holcomb Avenue qualifies the City as an abutting owner of the east half of the abandoned V.&T. right of way. However, the character of its title as such abutting owner is the same as its title to Holcomb Avenue, i.e., a determinable fee interest. Should the public use in the two strips together (Holcomb Avenue and the east half of the right of way) be some day abandoned or vacated, title to that land will revert to the owners then abutting to the east. It seems to us that this resolution is sensible, practical, and does no violence to established principles of property law. The east half of the right of way is not left as a noncontiguous fee in non-adjoining land owners; the presumed intention of the original dedicators of Holcomb Avenue would be honored (i.e., that had not an easement already been granted to the railroad company, they should not be presumed to have desired a retention of a strip of land on the other side of their public dedications); isolated strips of land in divergent, often inconvenient and sometimes

---

[4]The owners of property abutting Holcomb Avenue to the east have not asserted a claim to the east half of the abandoned right of way.

vexatious ownership is avoided; and, in the event the determinable fee interest of the City to the contiguous strips of land is later determined, title will revert to owners then abutting to the east.

In an effort to sustain the trial court's judgments quieting title in them, some of the respondents have urged additional theories. We have carefully considered them and find that none has merit, nor would it be useful to discuss them.

For the reasons expressed we reverse the judgments against the City of Reno, and direct that judgment be entered in the City's favor.

COLLINS, ZENOFF, BATJER, and MOWBRAY, JJ., concur.