[No. C065978. Third Dist. Aug. 30, 2011.]

HACIENDA RANCH HOMES, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
ROGER ELISSAGARAY et al., Real Parties in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of the Standard of Review and part II of the Discussion.

**COUNSEL**

Law Offices of Steven J. Hassing and Steven J. Hassing for Petitioner.

No appearance for Respondent.

Hakeem, Ellis & Marengo, Albert M. Ellis and Kenneth R. Hedberg for Real Parties in Interest Roger and Annette Elissagaray.

Miller Starr Regalia and Basil S. Shiber for Real Parties in Interest Stanley and Geurtje Boersma.

**OPINION**

**MAURO, J.**—Real parties in interest Roger and Annette Elissagaray initiated a lawsuit seeking to quiet title to a five-acre parcel of undeveloped real property in Tracy, California. The trial court subsequently denied a motion for summary judgment filed by defendant Hacienda Ranch Homes, Inc. (Hacienda), concluding there are triable issues of material fact as to whether the Elissagarays established adverse possession of the property under a claim of right.

Hacienda now seeks a writ of mandate, arguing that the Elissagarays cannot establish ouster as a matter of law. This court stayed proceedings in the trial court and issued an alternative writ.

We conclude there is no evidence that the Elissagarays ousted the other cotenants to establish adverse possession under a claim of right, and hence no triable issue of material fact.

We will issue a peremptory writ.

## BACKGROUND

Hacienda acquired an undivided 50 percent interest in the property in 1985. Defendants Stanley and Geurtje Boersma owned the other undivided 50 percent interest. Several years later, Hacienda transferred 49 percent of its undivided 50 percent interest (or 24.5 percent) to Helen Tyler, leaving Hacienda with an undivided 25.5 percent interest in the property.

In November 1998, San Joaquin County recorded a notice of power to sell tax-defaulted property. The notice identified the property to be sold as "an undivided 24.5% interest in and to" the subject property. The Elissagarays purchased their undivided 24.5 percent interest in the property at the tax sale on May 20, 1999. San Joaquin County recorded a tax deed on June 9, 1999, granting to the Elissagarays "an undivided 24.5% interest in and to" the property. A corrected tax deed granting "an undivided 24.5% interest in and to" the property to the Elissagarays was recorded on May 24, 2000.

The Elissagarays filed their complaint to quiet title in 2005, alleging that they purchased the property at public auction on May 20, 1999, and, since that time, "openly and exclusively occupied and possessed" the property to the exclusion of the prior owners, none of whom had asserted any interest in or claim to the property. The complaint sought a judgment affirming the Elissagarays as fee simple owners of 100 percent of the property.

In 2007, Hacienda filed its first summary judgment motion. Hacienda argued the tax deed to the property was unambiguous in conveying an undivided 24.5 percent interest in the property to the Elissagarays who, therefore, did not have color of title. As such, the Elissagarays had the burden to establish their adverse possession claim to the remaining undivided 75.5 percent interest in the property by claim of right, which Hacienda argued the Elissagarays could not do because they did not enclose, cultivate or improve the property as required by Code of Civil Procedure section 325,[1] and there was no evidence of ouster.

On September 17, 2007, the trial court issued an order denying Hacienda's first summary judgment motion without prejudice. The trial court found

---

[1] Code of Civil Procedure section 325, subdivision (a), provides, in relevant part, as follows:

"For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only:

"(1) Where it has been protected by a substantial enclosure.

"(2) Where it has been usually cultivated or improved."

Undesignated statutory references are to the Code of Civil Procedure.

triable issues of material fact regarding "what interest in the subject property [the Elissagarays] purchased at the tax sale," and "whether [the Elissagarays] established adverse possession of the subject property."

The parties agreed to a bifurcated trial and to submit on the written briefs as to phase 1 of the trial dealing with the extent of the interest in the property conveyed to the Elissagarays by the tax deed, and the effect, if any, of the applicable statutes of limitation on the Elissagarays' claim challenging the tax deed.

The trial court found that the tax deed was unambiguous and that the Elissagarays "acquired a 24.5% interest only" in the property. The trial court also determined that the Elissagarays' claim challenging the tax deed was barred by the one-year statute of limitation set forth in Revenue and Taxation Code sections 3725 and 3726.

On December 10, 2009, Hacienda filed a second summary judgment motion, arguing that the Elissagarays were tenants in common with Hacienda and the Boersmas; that the tax deed was unambiguous in conveying title to an undivided 24.5 percent interest only and thus the Elissagarays lacked color of title as a matter of law; and that the Elissagarays could not, as a matter of law, establish adverse possession of 100 percent of the subject property because they could not establish "acts of ownership of the most open, notorious and unequivocal character" or that they intended to "oust" the other cotenants of their interests in the subject property.

The Elissagarays opposed the second summary judgment motion, arguing that it was barred because Hacienda failed to show new facts, circumstances or law. The Elissagarays also argued that the manner in which they acquired title to the property at the tax sale showed an adverse or hostile claim sufficient to raise triable issues of material fact with respect to color of title and whether or not it was necessary to establish ouster. They argued further that the nature and extent of their use of the property—including that they removed weeds and grasses by discing the property two to three times each year, posted a "for sale" sign in proximity to the property, and paid all property taxes on the property since the date of purchase—raised triable issues of material fact as to their claim of adverse possession.

The trial court denied Hacienda's second summary judgment motion. The trial court reiterated its prior finding that the tax deed was not ambiguous and that it conveyed to the Elissagarays an undivided 24.5 percent interest in the property. In addition, having already determined that the tax deed was not invalid, void, voidable or defective, the trial court concluded the Elissagarays

"cannot prevail on a color of title theory, leaving [the Elissagarays] with only the claim of right theory."[2]

The trial court stated that in order to establish adverse possession under claim of right, section 325 required the Elissagarays to show "either substantial inclosure or usual cultivation or improvement." Moreover, because the Elissagarays were cotenants with Hacienda and the Boersmas, the Elissagarays had to " 'bring home or impart notice to the tenant out of possession, by acts of ownership of the most open, notorious and unequivocal character, that [they] intend[] to oust [them] of [their] interest in the common property. . . .' [Citation.]" The Elissagarays did not claim that they erected an "inclosure," so section 325 required them to "show that they 'usually cultivated or improved' the subject property." In that regard, the trial court distinguished four cases cited by Hacienda for the proposition that the clearing of weeds is not sufficient to meet the "usually cultivated or improved" requirement in section 325, noting that in each of the cited cases, the claimant had weeded the property only once, whereas the Elissagarays had "weeded the subject property by discing 2–3 times a year since the tax sale in 1999." The trial court found that a question of fact existed as to whether weeding the property two to three times a year met "the [section] 325 standard and the higher co-tenancy burden of proof."

The trial court noted that the Elissagarays weeded using the discing method which, according to the Elissagarays, "prevents overgrowth and as such improves and cultivates." The trial court found that, in the absence of any statutory or case law on point as to whether discing is a form of cultivation or improvement, a triable issue of material fact existed in that regard as well. The trial court concluded that triable issues of fact existed as to "whether [the Elissagarays'] actions were enough to establish adverse possession against their co-tenants under a claim of right argument."

Hacienda petitioned this court for a writ of mandate. We issued an alternative writ and stayed further proceedings in the trial court pending further order of this court.

### STANDARD OF REVIEW*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[2] At the same time the trial court also denied a summary judgment motion which had been filed by the Boersmas, identifying the same triable issues.

*See footnote, *ante,* page 1122.

## DISCUSSION

### I

The Elissagarays contend there is a triable issue of material fact as to whether they acquired a 100 percent interest in the property by adverse possession under a claim of right.

■ We begin with the elements of adverse possession. "(1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner. (2) It must be hostile to the owner's title. (3) The holder must claim the property as his own, under either color of title or claim of right. (4) Possession must be continuous and uninterrupted for five years. (5) The holder must pay all the taxes levied and assessed upon the property during the period. [Citations.]" (*Dimmick v. Dimmick* (1962) 58 Cal.2d 417, 421 [24 Cal.Rptr. 856, 374 P.2d 824].)

"But ' "[w]here, as here, a claim of ownership by adverse possession is asserted against a cotenant additional principles become operative. . . ." [Citation.]' [Citation.] ' "[E]ach tenant in common has a right to occupy the whole of the property. The possession of one is deemed the possession of all; each may assume that another in exclusive possession is possessing for all and not adversely to the others . . . ." ' [Citation.] ' " 'Before title may be acquired by adverse possession as between cotenants, the occupying tenant must bring home or impart notice to the tenant out of possession, by acts of ownership of the most open, notorious and unequivocal character, that he intends to oust the latter of his interest in the common property. [Citations.] Such evidence must be stronger than that which would be required to establish a title by adverse possession in a stranger. [Citation.]' . . . In short, one tenant in common cannot by mere exclusive possession acquire the title of his cotenant. [Citation.]" ' [Citations.]" (*Preciado v. Wilde* (2006) 139 Cal.App.4th 321, 325 [42 Cal.Rptr.3d 792], italics omitted.)

■ " 'An ouster, in the law of tenancy in common, is the wrongful dispossession or exclusion by one tenant of his cotenant or cotenants from the common property of which they are entitled to possession.' [Citation.]" (*Estate of Hughes* (1992) 5 Cal.App.4th 1607, 1612 [7 Cal.Rptr.2d 742] (*Hughes*) [absent any evidence of actual exclusion from the property in dispute, the court could not find an ouster].) "[O]uster must be proved by acts of an adverse character, such as claiming the whole for himself, denying the title of his companion, or refusing to permit him to enter." (*Zaslow v. Kroenert* (1946) 29 Cal.2d 541, 548 [176 P.2d 1] [denial of title, changing locks, posting "no trespassing" signs on the property, and denying admittance thereto constituted ouster].) "Whether there has been an ouster is a legal question. Where the

facts are disputed we must defer to the trial court's factual findings but we must nonetheless decide the legal issue de novo." (*Hughes, supra*, 5 Cal.App.4th at p. 1612.)

■ It is undisputed that the property is unimproved and that the Elissagarays never told the cotenants to stay off the property, never put up a fence or barrier prohibiting entry on the property, and never excluded the cotenants from the property. Nonetheless, the Elissagarays point to various alleged facts in support of their claim of adverse possession. They disced the property two or three times a year, they posted a "for sale" sign near the property, and they introduced themselves as owners of the property at a meeting. These circumstances, however, do not involve the type of open, notorious and unequivocal ouster of cotenants required to establish adverse possession under a claim of right. The occasional discing could be construed as routine maintenance for the benefit of all cotenants. The "for sale" sign (which was not placed on the property) and the meeting comments did not clearly notify the cotenants of an unequivocal and hostile claim to their ownership interests in the property.

■ The Elissagarays argue that the cotenants did not attempt to enter or use the property. But the law does not impose this requirement on cotenants of unimproved property in order for them to preserve their property interest in the absence of open, notorious and unequivocal notice of ouster.

The Elissagarays suggest, however, that "ouster" does not apply to these circumstances because they did not clearly begin their ownership of the property as a cotenant and the tax deed did not define their title as such.[3] But the trial court already found that the Elissagarays acquired a 24.5 percent interest in the property by tax deed, making them cotenants with Hacienda and the Boersmas, and that the tax deed is not ambiguous.

---

[3] The Elissagarays rely on *Zolezzi v. Michelis* (1948) 86 Cal.App.2d 827 [195 P.2d 835] (*Zolezzi*) and *Johns v. Scobie* (1939) 12 Cal.2d 618 [86 P.2d 820] (*Johns*) to support their argument, but those cases are inapposite. In *Zolezzi*, Bessie Zolezzi acquired title to the entire property by grant deed and built sheds on a strip of the property that would later be in dispute. (*Zolezzi, supra*, 86 Cal.App.2d at p. 829.) Christine Woehleke acquired title to the disputed strip two years later. (*Ibid.*) The Court of Appeal concluded that Zolezzi's possession "was not begun as a tenant in common with anyone, nor was it begun under a deed or other instrument defining her title as one of cotenancy." (*Zolezzi, supra*, 86 Cal.App.2d at pp. 830–831, italics omitted.) Here, however, the Elissagarays acquired only a partial interest in the property, never built structures on the property and never openly ousted the cotenants.

*Johns* is also distinguishable, because it involved color of title. In that case, a nephew lived with his uncle who owned 157 acres. The uncle deeded 45 acres to the nephew and died intestate. (*Johns, supra*, 12 Cal.2d at pp. 621–622.) The nephew occupied all 157 acres and built an eight-room dwelling on it. (*Id.* at pp. 622–623.) Later, the uncle's heirs, who became cotenants after the uncle's death, challenged the nephew's claim of adverse possession. (*Ibid.*) The California Supreme Court held that the nephew acquired title to the 45 acres by adverse possession, because even if the deed was invalid, it gave him color of title and gave notice to

II[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Because the order denying the Boersmas' motion for summary judgment is the same as the order denying Hacidenda's motion, and because the judgment appealed from " 'is so interwoven and connected with the remainder' " of this case (*Estate of McDill* (1975) 14 Cal.3d 831, 840 [122 Cal.Rptr. 754, 537 P.2d 874]), the trial court is directed to vacate its order denying the Boersmas' motion for summary judgment and to enter a new order granting the motion and judgment in favor of the Boersmas. Let a peremptory writ of mandate issue directing the trial court to vacate its order denying Hacienda's motion for summary judgment and to enter an order granting the motion and judgment in favor of Hacienda. The alternative writ, having served its purpose, is discharged. The stay of proceedings previously issued by this court is vacated upon the finality of this decision.

The parties shall bear their own costs in this writ proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(B).)

Nicholson, Acting P. J., and Butz, J., concurred.

A petition for a rehearing was denied September 28, 2011, and the opinion was modified to read as printed above.

·

---

the cotenants of his hostile claim. (*Johns, supra*, 12 Cal.2d at pp. 626–628.) No such facts are found in the instant case, however, and there is no basis for the Elissagarays to succeed based on color of title.

[*]See footnote, *ante*, page 1122.