# IN THE SUPREME COURT OF THE STATE OF NEVADA

NATIONAL GOLD MINING CORP., A NEVADA CORPORATION, F/K/A GREAT BASIN MINING & EXPLORATION CORP., A NEVADA CORPORATION; AND NEIL WHELCHEL, HEIR TO WILLIAM WHELCHEL, AND ATTORNEY IN FACT FOR BETTY WELCHEL, DECEASED,
Appellants,
vs.
HYGRADE GOLD COMPANY LTD., F/K/A RJT WHELCHEL DEVELOPMENT COMPANY LLC, A NEVADA LIMITED LIABILITY COMPANY,
Respondent.

No. 78685

FILED

JUL 01 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

NATIONAL GOLD MINING CORP., A NEVADA CORPORATION, F/K/A GREAT BASIN MINING & EXPLORATION CORP., A NEVADA CORPORATION,
Appellant,
vs.
HYGRADE GOLD COMPANY LTD., F/K/A RJT WHELCHEL DEVELOPMENT COMPANY LLC, A NEVADA LIMITED LIABILITY COMPANY,
Respondent.

No. 78984

21-18903

## ORDER OF AFFIRMANCE

These are consolidated appeals from a district court judgment following a bench trial and order awarding postjudgment costs in an action to quiet title to real property. Sixth Judicial District Court, Humboldt County; Michael Montero, Judge.

In the 1950s, brothers William and Ralph Whelchel purchased 14 patented mining claims and several unpatented mining claims in the National Mining District. They divided the patented claims into two groups: Group One claims and Group Two claims.[1] They then created the Whelchel Mining Company (WMC), an Idaho corporation, to explore and develop mineral properties. William, Ralph, and Ralph's wife Thressa each owned ten shares of WMC stock. In 1979, Idaho administratively dissolved WMC, and in 1980, William, acting as the President of WMC, recorded a deed purporting to convey the claims to himself and Ralph as cotenants. In 1981, Ralph and Thressa recorded an affidavit stating that WMC abandoned the claims and that Ralph and Thressa claimed title to them by adverse possession. In 1982, Ralph and Thressa recorded a quitclaim deed purporting to convey the claims from WMC to themselves.

In 1985, William's attorney sent a letter to Ralph taking issue with the 1982 Deed as giving "the unfortunate appearance that [Ralph] ha[d] attempted to convey the entire interest in the National Mine to [himself]." William's letter included a draft quitclaim deed that would

---

[1]The Group One claims are not at issue in this appeal as they are the subject of separate litigation in the Sixth Judicial District Court. Thus, this order *only* addresses the Group Two claims.



transfer any interest in the claims to William and Ralph as equal co-owners. William's letter further stated that William would file a quiet title action if Ralph and Thressa did not execute the quitclaim deed. Ralph's attorney replied by letter, asserting that William had abandoned the claims, and that Ralph and Thressa had paid the taxes and performed the annual assessment work for years, held the claims openly and notoriously, and intended to possess the claims themselves. Ralph's letter enclosed a draft quitclaim deed from William to Ralph and Thressa that disclaimed all William's interest in the Group Two claims. Neither party recorded either draft quitclaim deed nor did any additional correspondence occur.

Despite the 1982 Deed purporting to convey the claims via adverse possession to Ralph and Thressa, William and his son, appellant Neil Whelchel, periodically visited the claims. Those visits lasted several days and generally concluded with William and Neil visiting Ralph. Ralph died in 2001, Thressa died in 2002, and William died intestate in 2005. At the time of trial in the underlying matter, William's estate had not yet proceeded to probate. The combined estates of Ralph and Thressa conveyed the mining claims via deed to their sons John and Tim Whelchel. In July 2010, Neil, acting as the attorney-in-fact for William's wife Betty Whelchel deeded her entire fee simple interest in the claims to appellant National Gold Mining Corporation. In 2012, John and Tim conveyed the claims to respondent Hygrade Gold Company Ltd.

National filed a quiet title action against Hygrade based on the July 2010 conveyance. Hygrade counterclaimed to quiet title. The matter proceeded to a bench trial, after which the district court concluded that Betty did not receive William's interest following his death because he

acquired his interest before his marriage to Betty and it thus remained William's separate property. Since Betty had no interest, Neil's 2010 purported conveyance of Betty's interest in the claims to National was ineffective, such that National likewise held no interest in the claims. The district court concluded that title should quiet in Hygrade's favor pursuant to NRS 40.090 because it presented sufficient evidence that its predecessors-in-interest adversely possessed the claims as to all known and unknown claimants for the requisite period of time.[2] On Hygrade's motion, the district court awarded Hygrade reduced costs.

*National's standing to appeal*

Hygrade argues that National lacks standing to appeal because Betty had no interest in the claims to convey to National. Hygrade further argues that National is not an aggrieved party because William's estate—not National—would receive an interest in the claims should the appeal be successful. We disagree.

A party is aggrieved for appeal purposes when "'either a personal right or right of property [is] adversely and substantially affected' by a district court's ruling." *In re Parental Rights as to T.L.*, 133 Nev. 790, 792, 406 P.3d 494, 496 (2017) (quoting *Valley Bank of Nev. v. Ginsburg*, 110

---

[2]The court rejected Hygrade's alternative theory of adverse possession under NRS 11.060. Further, the district court concluded that several unnamed parties—former WMC shareholders—had an ownership interest in the Group Two claims. Hygrade identified and served the former WMC shareholders as necessary parties; however, none of the former shareholders appeared at trial. The district court order quieted title against the unnamed shareholders, and no unnamed shareholder challenges that determination on appeal.

Nev. 440, 446, 874 P.2d 729, 734 (1994)). "The grievance must be substantial in that the district court's decision imposes an injustice, or illegal obligation or burden, on the party, or denies the party an equitable or legal right." *Id.*

Here, Betty conveyed her interest in the claims to National via grant deed. If she acquires any legal estate in the claims upon final administration of William's estate, that legal estate will pass to National. NRS 111.160 (providing that when a grantor who sells property in "fee simple absolute" acquires any "legal estate" in the property thereafter, the legal estate subsequently acquired passes immediately to the grantee, "and such conveyance shall be valid as if such legal estate had been in the grantor at the time of the conveyance"); *Klamath Land & Cattle Co. v. Roemer*, 91 Cal. Rptr. 112, 115 (Ct. App. 1970) ("A grant deed unquestionably transfers an after-acquired title."). Accordingly, National has standing to challenge the district court's decision because Hygrade's quiet title judgment extinguishes National's potential interest in the claims.[3]

*Hygrade satisfied the requirements for adverse possession under NRS 40.090*

A party may bring a quiet title action if they adversely possessed the land for 15 or more years and paid all taxes levied or assessed against the property for the 5 years preceding the filing of its complaint. NRS 40.090(1). To adversely possess land, the adverse possessor must show

---

[3]We conclude, however, that Neil Whelchel as an individual does not have standing because he "release[d] and relinquishe[d] all of his right, title and interest" in the claims. Moreover, any interest that Betty may acquire would pass to National via the after-acquired title doctrine once William's estate goes through probate. Thus, Neil has no interest in the claims and, accordingly, is not an aggrieved party.

that "the occupation of the property is 'hostile, actual, peaceable, open, notorious, continuous and uninterrupted'" for the statutory period. *Triplett v. David H. Fulstone Co.*, 109 Nev. 216, 219, 849 P.2d 334, 336 (1993) (quoting *Sutro Tunnel Co. v. Lipscomb*, 102 Nev. 225, 231, 720 P.2d 1204, 1207 (1986)). Possession must be exclusive. *O'Banion v. Simpson*, 44 Nev. 188, 204, 191 P. 1083, 1088 (1920). The adverse possessor must prove each element by clear and competent evidence. *Biasi v. Leavitt*, 101 Nev. 86, 89-90, 692 P.2d 1301, 1304 (1985).

*Ralph and Thressa satisfied the hostility element by ousting William*

National argues that the district court erroneously concluded that Ralph and Thressa satisfied the "hostility" and "exclusive possession" elements of NRS 40.090,[4] as the record does not show that they ousted William from the claims. Specifically, National argues that William's continued amicable use of the property defeats the hostility requirement necessary to oust a sibling cotenant regardless of the 1985 correspondence, the 1981 Affidavit, and the 1982 Deed. We disagree.

Adverse possession requires that the adverse possessor's claim of title be hostile. *Lanigir v. Arden*, 82 Nev. 28, 35, 409 P.2d 891, 895 (1966). When the parties involved are cotenants, the adverse possessor must oust the cotenant to satisfy the hostility requirement. *See id.* "An ouster, in the

---

[4]Because National did not raise the issue below of whether the district court properly analyzed Hygrade's quiet title claim separately under two different statutory bases for adverse possession as provided by NRS 11.060 and NRS 40.090, we decline to consider the argument on appeal. *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal.").

law of tenancy in common, is the wrongful dispossession or exclusion by one tenant of his cotenant or cotenants from the common property of which they are entitled to possession." *Hacienda Ranch Homes, Inc. v. Superior Court*, 131 Cal. Rptr. 3d 498, 503 (Ct. App. 2011) (quoting *Estate of Hughes*, 7 Cal. Rptr. 2d 742, 745 (Ct. App. 1992)). Where the cotenant is a sibling, the adverse possessor must "openly disavow the claims of his brothers and sisters, and unequivocally make his claim of sole ownership known to them." *Lanigir*, 82 Nev. at 35, 409 P.2d at 895.

Here, substantial evidence supports the district court's conclusion that Ralph and Thressa ousted William. First, they openly and unequivocally disclaimed William's interest by recording the 1981 Affidavit, which purported to take title to the claims by adverse possession, and the 1982 Deed, which purported to convey the claims to themselves. *Hacienda Ranch Homes*, 131 Cal. Rptr. 3d at 503 ("[O]uster must be proved by acts of an adverse character, such as claiming the whole for himself, denying the title of his companion, or refusing to permit him to enter." (quoting *Zaslow v. Kroenert*, 176 P.2d 1, 5 (Cal. 1946) (alteration in original))). Next, William was aware that Ralph and Thressa claimed title as acknowledged by his attorney's 1985 letter to Ralph's attorney. Accordingly, we conclude that the district court properly determined that Ralph and Thressa ousted William and thus satisfied the hostility requirement for adverse possession.[5] *See U.S. Bank, Nat'l Ass'n ND v. Res. Grp., LLC*, 135 Nev. 199,

---

[5]National's argument that adverse possession cannot occur where it is possible for the law to impute a concurrent possession does not affect this analysis because ouster is required to assert an adverse possession claim against a cotenant. *See Lanigir*, 82 Nev. at 35, 409 P.2d at 895. Thus, by

SUPREME COURT
OF
NEVADA

(O) 1947A

200-01, 444 P.3d 442, 445 (2019) (observing that Nevada appellate courts apply de novo review to a district court's legal conclusions); *Wells Fargo Bank, N.A. v. Radecki*, 134 Nev. 619, 621, 426 P.3d 593, 596 (2018) (recognizing that this court reviews a district court's factual findings for clear error or substantial evidence); *cf. Lanigir*, 82 Nev. at 35-36, 409 P.2d at 895 (holding that the adverse possessor failed to oust his sibling cotenant because he never told his siblings that he claimed to be the sole owner of the property, he acknowledged his brother's interest in the property by providing for that interest in his divorce settlement, and he was aware that his siblings might assert an interest in the property).

### *Ralph and Thressa satisfied the exclusive possession element*

National argues that Ralph and Thressa failed to show that their possession of the claims was exclusive because their implied agreement to William's continued use of the property interrupted their exclusive possession. We disagree.

"[E]xclusive possession means that the claimant must hold possession of the land for himself, as his own, and not for another." *O'Banion*, 44 Nev. at 204, 191 P. at 1088 (internal quotation marks omitted). While the adverse possessors must show that they excluded the owner from possession, "sporadic use, temporary presence, or permissive visits by others, including the record owner, will not defeat the exclusive

---

concluding that an ouster occurred, the law will not impute a concurrent possession. *See id.* (holding that a sibling "openly disavow[ing] the claims of his brothers and sisters, and unequivocally mak[ing] his claim of sole ownership known to [his siblings]" ousts other sibling cotenants and is sufficient to show hostility for the purposes of adverse possession).

element." *Nutting v. Reis*, 326 S.W.3d 127, 130 (Mo. Ct. App. 2010) (quoting *Martens v. White*, 195 S.W.3d 548, 556 (Mo. Ct. App. 2006)); *see also Smith v. S. Pac. R.R. Co.*, 34 P.2d 713, 714 (Cal. 1934) ("To interrupt the adverse user the re-entry of the legal title holder must be open, notorious, and under claim of right, and must equal in dignity and character that required to initiate an adverse possession.").

Here, substantial evidence, including Neil's testimony, supports the district court's conclusion that Ralph gave William implicit permission to use the land. Accordingly, we conclude that the district court properly rejected National's argument that William's permissive use of the land defeated Ralph and Thressa's exclusive possession. *Res. Grp.*, 135 Nev. at 200-01, 444 P.3d at 445; *Radecki*, 134 Nev. at 621, 426 P.3d at 596; *see Nutting*, 326 S.W.3d at 130 (recognizing that permissive use by the record owner does not defeat the exclusive element). Although National relies on *Porter v. Tempa Mining & Milling Co.*, 59 Nev. 332, 339, 93 P.2d 741, 743 (1939), that case is factually distinguishable, as the record owners of the mining claims in that case interrupted the adverse possessor's exclusive possession by visiting the mining claim to perform required annual maintenance without the adverse possessor's permission to enter the claim. Here, substantial evidence supports the district court's finding that William had Ralph's implicit permission to enter the claims after Ralph and Thressa ousted William. Accordingly, we perceive no error in the district court's

conclusion that Ralph and Thressa took exclusive possession of the claims after they ousted William.[6]

As substantial evidence supports the district court's findings that Ralph and Thressa satisfied all of the elements of adverse possession under NRS 40.090, we conclude that that it properly quieted title to the claims in Hygrade's favor. As Hygrade prevailed on its claim, we likewise conclude that the district court did not abuse its discretion when it awarded costs to Hygrade under NRS 18.020(1). *Logan v. Abe*, 131 Nev. 260, 267, 350 P.3d 1139, 1144 (2015) ("We review an award of costs for an abuse of discretion."). For the foregoing reasons, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Cadish

_____, J.          _____, J.
Pickering                                              Herndon

---

[6] National also relies on *Su Lee v. Peck*, 49 Nev. 124, 240 P. 435 (1925), to argue that the "[m]ere execution of a deed purporting to convey the entire interest in the property by one [cotenant] is not effective ouster unless the grantee takes exclusive possession of the property to the detriment of the other [cotenant]." As we conclude that the district court properly determined that Ralph and Thressa did take exclusive possession after ousting William, *Su Lee* is inapposite.

SUPREME COURT
OF
NEVADA

(O) 1947A

cc:   Hon. Michael Montero, District Judge
      J. Douglas Clark, Settlement Judge
      Parsons Behle & Latimer/Reno
      C. Nicholas Pereos, Ltd.
      Rutledge Law Center Ltd.
      Lemons, Grundy & Eisenberg
      Humboldt County Clerk